**NAMEKAGON HYDRO COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 11029.

United States Court of Appeals
Seventh Circuit.

Oct. 29, 1954.

**510**

Glen H. Bell, Madison, Wis., E. E. Omernik, Spooner, Wis., Robert M. Rieser, Charles · P. Seibold, Madison, Wis., for petitioner.

John C. Mason, Atty., Willard W. Gatchell, Gen. Counsel, Louis C. Kaplan, Joseph E. Hayden, Attys., Federal Power Commission, Washington, D. C., for respondent.

Roy G. Tulane, Asst. Atty. Gen. of Wisconsin, Vernon W. Thomson, Atty. Gen. of Wisconsin, for intervenors.

A. D. Sutherland, Fond Du Lac, Wis., for Wisconsin Division of Izaak Walton League of America, Inc., amicus curiae.

Fischer, Brunner & Strossenreuther, Shawano, Wis., amicus. curiae.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

This is a proceeding under Sec. 313(b) of the Federal Power Act,[1] to review an order of the Federal Power Commission which denied the application of Namekagon Hydro Company for a license under the Federal Power Act to construct a dam and hydroelectric project on the Namekagon River in Washburn County, Wisconsin. The Commission found that "the proposed project is not best adapted for beneficial public uses of the Namekagon River, including the use of the stream for recreational purposes".

Sec. 10(a) of the Act[2] provides: "All licenses issued under this Part shall be on the following conditions: (a) That the project adopted, * * * shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, including recreational purposes; * * *."

The Namekagon River is about 85 miles in length, arises in Namekagon Lake in Bayfield County, Wisconsin, and flows through portions of Bayfield, Sawyer, Washburn and Burnett Counties, and joins the St. Croix River near Riverside, Wisconsin, about 6 miles east of the Wisconsin-Minnesota boundary.

It is proposed to locate the hydroelectric project on the Namekagon River in Washburn County at a point about 12 miles upstream from where the Name-

---

1. 49 Stat. 860, 16 U.S.C.A. § 791a et seq.

2. 49 Stat. 842, 16 U.S.C.A. § 803(a).

kagon empties into the St. Croix River. The plan calls for a dam and power house operating under a head of 25 feet. A narrow reservoir would be created extending about 6½ miles upstream from the dam. The capacity of the proposed project would be 1500 kilowatts.

Public hearings were held on the application for a license. The town of Chicog in Washburn County, the city of Spooner, officials of Washburn County and the Trego Rod and Gun Club supported the application. The Attorney General on behalf of the State of Wisconsin, the United States Fish and Wildlife Service, the Wisconsin division of the Izaak Walton League of America and others opposed the application. The examiner made findings and recommended that the license be issued but the Commission, after considering the briefs filed, and after hearing oral arguments, issued its order denying the license for the Namekagon hydroelectric project.

As is often the case when an application is made for a license to build a power dam, a conflict of interests is encountered. In the instant case the proposed project has engineering feasibility, the applicant is able to finance its construction, and the areas involved could make use of the power generated. Those located in the immediate area where the dam is proposed to be built are largely favorable to its construction.

But Congress was aware that conflicting interests would, in all likelihood, be encountered when it formulated the statutory guides to be found in Section 10(a) of the Act. Recreational values of a project are one of the benefits to be considered by the Commission. When Congress inserted the phrase "including recreational purposes", in the 1935 amendment to the Act, it was stated in Senate Rep. No. 621, 74th Congress, 1st Sess., pages 44–45 "In keeping with the changes made by section 205, subsection (a) is amended to provide that as a condition of the issuance of a license the project shall be such that, in the judgment of the Commission will be best adapted to a comprehensive scheme 'for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce' instead of the more limited 'for the purposes of navigation.' It also adds to the other beneficial public uses to which the project may be adapted, an express provision that the Commission may include consideration of recreational purposes."

■■■ Sec. 313(b) of the Federal Power Act provides that the findings of the Commission, as to the facts, shall be conclusive if supported by substantial evidence. Furthermore, before the Commission may issue a license under Sec. 4(e) of the Act it must find under Sec. 10(a) of the Act that the proposed project in the judgment of the Commission, will be best adapted to a comprehensive plan, etc. Obviously, Congress left it to the judgment of the Commission as to whether a proposed project meets the best plan test of Sec. 10(a). Our inquiry is, does the judgment of the Commission as exercised have a rational basis in the evidence? Montana Power Company v. Federal Power Commission, 9 Cir., 112 F.2d 371. In order to determine whether the findings of the Commission are supported by substantial evidence we shall examine the record and consider same as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

For many years past the tourist business has been an important business activity in the State of Wisconsin. In the summer season many thousands of visitors come annually from various states to the northern part of Wisconsin to spend their vacations and for recreation. The State of Wisconsin spends about $450,000.00 a year in advertising and publicizing this resort and recreational area of the state. In those advertisements emphasis is laid on Wisconsin's eight thousand lakes and its miles of fishing streams. Many tourists are attracted by the facilities for fishing and boating.

At the time Wisconsin became a state there were nearly 10,000 miles of free-flowing rivers within its borders. At the present time there are only 770 miles of such rivers left and the Wisconsin Conservation Commission has endeavored to preserve them in their natural state. The lower 22 miles of the Namekagon is one of those free-flowing rivers.

The 22 miles of the Namekagon River from Trego dam to its mouth is a beautiful stretch of water. The banks are, to a large extent, timbered with northern hardwoods and various species of pine. The river is accessible at a number of places to canoeists. The water in the river is uniformly shallow and the rapids are comparatively gentle. On this stretch of the river canoeing is safe for children as well as for inexperienced adults. During the summer season many groups of young people such as Boy Scouts, Girl Scouts, Future Farmers and 4-H Clubs have made canoe trips on this part of the river. Such trips could not very well be made after a dam had been installed as proposed in the application herein, because of the great difficulty which young people would encounter in portaging around the dam installation.

The Namekagon River has had a national reputation for many years as one of the best small mouth black bass fishing streams, and anglers have been attracted to the river from great distances. A fast-flowing stream such as the Namekagon, where small mouth bass are propagated furnishes the type of fishing that has always been highly esteemed, yet has been quite uncommon. However, as such habitat has become increasingly rare the bass-fishing situation in the Namekagon can be considered unique.

But perhaps the uniqueness of the river is more apparent to those who take a float trip. Many of such persons are from urban centers and to see wild life in a natural setting is a thrill indeed. Such a float trip is exciting as well as peaceful. Passing by heavily wooded banks on either side, with no noise or sound to be heard from highways or railroads, the canoeist has the illusion of being in a forest primeval, far from civilization. Each bend of the river is watched with anticipation for a deer may be seen on the bank, or, occasionally, a black bear scurrying for the timber. There are very few, if any, comparable stretches of river left in Wisconsin. A canoe trip on the Namekagon often calls for a repeat performance, one witness testifying that he had made 90 canoe trips thereon.

Petitioner argues that after the dam is constructed there will be formed a flowage 6½ miles in length which would be suitable for both fishing and boating. But the Commission had the right to consider that the elongated pond or reservoir thus formed would furnish boating and fishing quite comparable to that in 85 other lakes within a 10-mile radius of the dam site, and that there would be nothing unusual or unique about the body of water thus formed.

Under Sec. 10(a) of the Act it was the Commission's responsibility to protect the public interest. The Act requires that the Commission exercise its judgment. We think there was substantial evidence and a rational basis for the Commission's finding of existing unique recreational value in the lower 22 mile stretch of the Namekagon River which should be preserved. The Commission, in fact, decided that the unique recreational features of the river were of greater public benefit than the use of the river for water-power development. We think that the Commission was well within its powers in determining that even at the expense of a relatively small water-power development, the unique and special recreational values of the lower 22 miles of the Namekagon River should not be destroyed. Surely, this was not an arbitrary exercise of the Commission's judgment in view of the evidence in this record. We cannot say, within the limited scope of review open to us, that the Commission's findings are not warranted by the record. United States ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 171, 73 S.Ct. 609, 97 L.Ed. 918.

Petitioner makes the further point that the Commission is without power to deny an application for a license. Petitioner points to a clause in Sec. 10(a) of the Act, 16 U.S.C.A. § 803 (a), " * * * and if necessary in order to secure such plan the Commission shall have authority to require the modification of any project and of the plans and specifications of the project works before approval."

As we understand petitioner's argument, it concedes that the Commission might require repeated modifications of a project, but contends that it could never reach the point of denying the petition. The argument is ingenious, but we think it is without merit. To hold that the Commission might insist upon modification in or amendments to a proposed project, but could, in no case, deny an application, might well bring about a regulatory impasse. Here, the project dam and flowage would destroy the very special and unique recreational features which the Commission has determined that it was bound to protect in the public interest. No modification of the project short of its prohibition would serve the public interest. We think that it is a necessary corollary to the power of the Commission to grant a license when certain conditions are met, that the Commission has the right to deny such license for failure to comply.

The Wisconsin Public Service Commission contends that the Namekagon River is not a navigable water of the United States and, therefore, the Commission had no jurisdiction to grant a license to applicant. This contention is consistent with the position taken by the Public Service Commission of Wisconsin in State of Wisconsin v. Federal Power Commission, 7 Cir., 214 F.2d 334 decided by this Court July 2, 1954. However, under the authority of that decision, we hold that section of the Namekagon River which would be affected by the project in question, is a navigable water of the United States.

Affirmed.