**ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 285, Docket 29181.

United States Court of Appeals Second Circuit.

Argued Jan. 25, 1965.

Decided April 6, 1965.

Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., Naylon, Aronson, Huber & Magill, New York City (Edward F. Huber, New York City, Daniel G. Kennedy, Rochester, N. Y., James M. Baisley, New York City, Albert L. Beswick, Rochester, N. Y., of counsel), for petitioner.

Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Sol., Joseph Hobbs, George Bruder, Attys., F. P. C., for respondent.

Before WATERMAN, SMITH and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

The Genesee River rises in the Allegheny Mountains of Pennsylvania and flows northward for 158 miles through New York State to Lake Ontario. Petitioner operates three hydroelectric projects on a stretch of rapids and falls in Rochester, New York, six miles from the mouth of the river. It maintains a fourth power project in Mount Morris, New York, on another turbulent stretch of the river sixty-five miles from the mouth.

Petitioner requested the Federal Power Commission to issue an order declaring that these projects did not have to be licensed under Section 23(b) of the Federal Power Act, 16 U.S.C. § 817. The Commission rejected the request and directed petitioner to apply for licenses for the projects within ninety days. Petitioner asks us to review the Commission's order pursuant to Section 313(b) of the Act, 16 U.S.C. § 825l(b).

The parties agree that petitioner must comply with the Commission's order if, but only if, the four projects are located on "navigable waters" within the meaning of Section 3(8) of the Act, 16 U.S.C. § 796(8):

> " '[N]avigable waters' means those parts of streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, and which either in their natural or improved condition notwithstanding interruptions between the navigable parts of such streams or waters by falls, shallows, or rapids compelling land carriage, are used or suitable for use for the transportation of persons or property in interstate or foreign commerce, including therein all such interrupting falls, shallows, or rapids * * *."

The parties also agree that the Genesee River need not be navigable for its entire length to be "navigable waters" at Rochester and Mount Morris; that the river is navigable from its mouth to the rapids and falls in Rochester; and that these rapids and falls are "navigable waters" if the river is navigable above them. See United States v. Appalachian Elec. Power Co., 311 U.S. 377, 409, 410, 61 S.Ct. 291, 85 L.Ed. 243 (1940); Citizens Utils. Co. v. FPC, 279 F.2d 1 (2 Cir.), cert. denied, 364 U.S. 893, 81 S.Ct. 224, 5 L.Ed.2d 188 (1960); Montana Power Co. v. FPC, 87 U.S.App.D.C. 316, 185 F.2d 491, 494 (1950), cert. denied, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683

(1951). In short, this appeal turns on whether the Genesee River is navigable from above the rapids and falls in Rochester to the power project at Mount Morris.

The parties disagree, however, on what constitutes navigability under Section 3 (8). Petitioner argues that the Genesee River is "navigable waters" only where (1) it is *presently* being used or is suitable for use in its natural or *presently* improved condition. The Commission contends that, in addition, the Genesee River is "navigable waters," where (2) in the *past* it was used or was suitable for use in its natural or improved condition, or where (3) it can be made suitable for use by reasonable *future* improvements.

■ The Commission relies heavily on United States v. Appalachian Elec. Power Co., supra, 311 U.S. at 407–410, 61 S.Ct. at 299–300. There the Supreme Court stated, with regard to use or suitability for use in the *past*: "When once found to be navigable, a waterway remains so. * * * Even absence of use over long periods of years, because of changed conditions, the coming of the railroad or improved highways does not affect the navigability of rivers in the constitutional sense." In the same passage the Supreme Court stated, with respect to suitability for use in the *future*: "In determining the navigable character of [a river] it is proper to consider the feasibility of interstate use after reasonable improvements which might be made. * * * Nor is it necessary that the improvements should be actually completed or even authorized."

Petitioner contends that United States v. Appalachian Elec. Power Co. is inapplicable here, because that case arose out of Sections 9 and 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401, 403, and therefore did not involve interpretation of Section 3(8) of the Federal Power Act. However plausible this contention may have been at one time, it is no longer arguable now. Every court which has considered the question, including our own, has treated the quoted portions of United States v. Appalachian Elec. Power Co. as fully applicable to the definition of "navigable waters" in Section 3(8).[1]

■ Accordingly, we hold that the Genesee River is "navigable waters" from Rochester to Mount Morris, if (1) it *presently* is being used or is suitable for use, or (2) it has been used or was suitable for use in the *past*, or (3) it could be made suitable for use in the *future* by reasonable improvements.

■ The parties agree that these criteria of navigability raise issues of fact and that, pursuant to Section 313(b), the Commission's findings thereon are conclusive "if supported by substantial evidence." Wisconsin Pub. Serv. Corp. v. FPC, supra, 147 F.2d at 748; cf. United States v. Appalachian Elec. Power Co., supra, 311 U.S. at 405, 61 S.Ct. 291. The Commission notes that none of its previous findings of navigability have ever been set aside by the courts. We congratulate the Commission on its achievement, which is undoubtedly attributable to the full factual foundation on which its findings have heretofore been based. This successful performance, however, does not relieve the Commission of the continuing obligation to rely on evidence that is substantial when it determines that a river is navigable.

In this proceeding the Commission adduced no evidence of its own, and cited no factual sources from outside the record

---

1. Citizens Utils. Co. v. FPC, supra, 279 F.2d at 3; Montana Power Co. v. FPC, supra, 185 F.2d at 494–495; Pennsylvania Water & Power Co. v. FPC, 74 App. D.C. 351, 123 F.2d 155, 158 (1941), cert. denied, 315 U.S. 806, 62 S.Ct. 640, 86 L.Ed. 1205 (1942); Georgia Power Co. v. FPC, 152 F.2d 908, 912–913 (5 Cir. 1946); Wisconsin Pub. Serv. Corp. v. FPC, 147 F.2d 743, 748 (7 Cir.), cert. denied, 325 U.S. 880, 65 S.Ct. 1574, 89 L.Ed. 1996 (1945). See State of Wisconsin v. FPC, 214 F.2d 334, 337–338 (7 Cir.), cert. denied, 348 U.S. 883, 75 S.Ct. 124, 99 L.Ed. 694 (1954).

in its decision, but relied wholly on the data contained in petitioner's application for a declaratory order, even though petitioner may not have set forth as full a statement of the case as the Commission's rules require. Of course it was the Commission's prerogative to decide the case on this basis so long as the evidence before it was sufficient. But under the circumstances we are unsympathetic to the Commission's belated attempt to buttress its decision on appeal with factual matter from historical treatises which are cited for the first time in its brief.

The Commission made no finding that the Genesee River, except for the six miles at its mouth, *presently* is being used or is suitable for use as an avenue of interstate or foreign commerce.

■ The Commission found that the Genesee River has been used or was suitable for use in the *past* from above the rapids and falls in Rochester to the power project at Mount Morris. This finding was based on the following statements in petitioner's application for a declaratory order:

> "Rochester, New York, was first settled in 1812. In the 28 years between that time and 1840, the early settlers made repeated attempts to employ the river channel for navigation by flat-bottomed barges and rafts. The early settlers sent rafts carrying potash, pearlash, and lumber by river to Rochester. Early farmers also rafted some of the wheat grown in the valley to the Rochester mills.
>
> \* \* \* \* \* \*
>
> "There is evidence that subsequent to the opening of the Erie Canal in 1825 goods were transported downriver [to just above the rapids and falls in Rochester] for shipment on the Erie Canal. \* \* \* [A]vailable evidence [does not] establish that any commercial shipment of goods downriver was ever initiated as far south as the Mount Morris plant.
>
> \* \* \* \* \* \*
>
> "As early as 1825 plans were initi-

ated for the construction of the Genesee Valley Canal, which would parallel the Genesee River from Rochester as far south as Mount Morris, to provide a waterway for the shipment of goods to Rochester and to the Erie Canal. Construction of this particular segment of the Genesee River Canal was completed and opened in 1840. The Genesee Valley Canal was itself abandoned by the State of New York on September 30, 1878. \* \* \* "

We hold that petitioner's statements regarding use of the river channel from 1812 to 1840 constituted substantial evidence supporting the Commission's finding that the Genesee River is "navigable waters" above the rapids and falls in Rochester. Accordingly, we affirm the Commission's order insofar as it directs petitioner to apply for licenses for the three power projects in Rochester.

■ Petitioner contends that the use of the river between 1812 and 1840 was too limited and too brief to demonstrate navigability. We disagree, having in mind the rule that "small traffic compared to the available commerce of the region is sufficient," and that disuse attributable to "improved highways does not affect the navigability of rivers." United States v. Appalachian Elec. Power Co., supra, 311 U.S. at 409–410, 61 S.Ct. at 300. In this case the use occurred at an early stage in the economic development of the region, and the river was abandoned only when an improved waterway became available.

■ Petitioner also contends that there is no evidence that the goods shipped down the river entered into interstate or foreign commerce. Perhaps the Commission was justified in inferring that some of these goods eventually must have crossed state or national boundaries. In any event, we agree with the Commission that actual use of a river for intrastate shipments demonstrates its suitability for use as a connecting waterway for interstate or foreign shipments. Especially is this true where the river

runs directly into acknowledged avenues of interstate or foreign commerce, here the Erie Canal and Lake Ontario. See United States v. Appalachian Elec. Power Co., supra, 311 U.S. at 406 n. 21, 61 S.Ct. 291, quoting The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999 (U.S.1871).

On the other hand, we hold that the statements quoted above from petitioner's application did not constitute substantial evidence that the Genesee River had been used or was suitable for use as far upstream as the power project at Mount Morris. The Commission relies on the following inferences: if milled lumber was rafted downstream from below Mount Morris, logs must have been floated downstream to the mills from above Mount Morris; the naming of towns located on the river above Mount Morris, "Portage" and "Portageville," shows that the river above Mount Morris was used for transporting goods; and the Genesee Valley Canal would not have been extended through Mount Morris if there had not already been commercial traffic on the river as far upstream as Mount Morris. With all due allowance for the Commission's expertise,[2] we cannot agree that these inferences were supported by substantial evidence.

■ The Commission also argues that the Genesee Valley Canal, which ran through Mount Morris, can be considered an improvement of the river itself. However, canal traffic made no use whatever of the river bed except at occasional crossing points. Thus the canal was no more an improvement of the river than was the Pennsylvania Railroad branch line which in turn superseded the canal. The Commission stresses Judge Groner's statement in Pennsylvania Water & Power Co. v. FPC, supra, 123 F.2d at 161, that the Susquehanna River, "with the

aid of canals along its banks, bore a considerable interstate commerce for a long period of years." However, even after the completion of the Susquehanna and Tidewater Canal, "arks which were too wide to pass through the locks were navigated in the river itself during periods of high water." 2 F.P.C. 61, 68 (1939).

■ The Commission found that the Genesee River from Rochester to Mount Morris could be made suitable for use in the *future* by reasonable improvements. This finding was based on data attached to petitioner's application which indicates an average stream-flow at Mount Morris of about 1600 cubic feet per second and an average stream-slope from Rochester through Mount Morris to Portage of about 3.9 feet per mile. The Commission's finding was also based on statements in the report of the New England-New York Inter-Agency Committee, The Resources of the New England-New York Region, "Genesee River Basin" § VIII, at 2–3 (1955):

"The River and Harbor Act of 1950 authorized a study of the Allegheny and Genesee Rivers with a view to providing a through waterway. The preliminary examination submitted in response to this authorization was unfavorable.

\*　　\*　　\*　　\*　　\*　　\*

"Present facilities for navigation are considered adequate. No further development of these facilities in the Genesee River Basin is contemplated at this time."

■ The Commission contends that the flow and slope of the Genesee River compare favorably with the flows and slopes of other rivers held to be navigable by the courts since United States v. Appalachian Elec. Power Co. It is noteworthy, however, that of the rivers with

---

**2.** According to the Commission's Brief on Appeal, pp. 27–28:

"As a physical anthropologist can determine the age of a person at death, the sex, and sometimes even the stature from two or three bones or fragments of bones from the skeleton, so the Commission's specialized observation, study, and experience by 1964 enabled it to reach firm conclusions from fragmentary facts which, as isolated facts, might be meaningless or susceptible to opposing inferences by a jury unassisted by an expert (i. e., someone having the benefit of specialized observation, study, and experience)."

599

lesser flows, three are useful only for recreation or for floating logs,[3] and the fourth was treated by the court as navigable for less than a mile.[4] It is noteworthy, also, that the gradient of the Genesee River in the twenty-one miles on either side of Mount Morris averages 10.5 feet per mile, which is considerably steeper than were the applicable slopes in the other court cases principally relied on by the Commission.[5] In any event, flows and gradients alone do not demonstrate the physical eligibility of a river for reasonable improvement. One also needs to know widths, depths, contours, velocities, and similar characteristics which do not appear anywhere in the evidence. See Montana Power Co. v. FPC, supra, 185 F.2d at 495.

As for the statements in the report quoted above, the Commission claims that they are indicative of the river's continuing susceptibility to reasonable improvement. On the contrary, they signify to us that improvement of the river is unfeasible for the time being. Indeed, on this branch of the case the Commission seems to have completely overlooked the test of economic practicability laid down in United States v. Appalachian Elec. Power Co., supra, 311 U.S. at 407–408, 61 S.Ct. at 299: "There must be a balance between cost and need at a time when the improvement would be useful." Compare Pennsylvania Water & Power Co. v. FPC, supra, 123 F.2d at 161. Accordingly, we hold that the Commission's finding with regard to the river's suitability for use in the future was based on considerably less than substantial evidence.

The order of the Commission is vacated insofar as it directs petitioner to apply for a license for the power project in Mount Morris. The case is remanded to the Commission for the taking of addi-

tional evidence on the navigability of the Genesee River at Mount Morris and for findings on this issue in conformity with our opinion. Otherwise, as noted above, the order of the Commission is affirmed.

---

3. Namekagon Hydro Co. v. FPC, 216 F. 2d 509 (7 Cir. 1954); Wisconsin v. FPC, supra; Wisconsin Pub. Serv. Corp. v. FPC, supra.

4. Citizens Utils. Co. v. FPC, supra.

5. United States v. Appalachian Elec. Power Co., supra (4.5 feet per mile); Montana Power Co. v. FPC, supra (3.8 feet per mile).