**GREAT NORTHERN NEKOOSA CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 77–188 P.

United States District Court, D. Maine.

July 22, 1982.

Kenneth Laurence, Mark A. Michelson, Edward F. Hines, Jr., Mitchell H. Kaplan, Choate, Hall & Stewart, Boston, Mass., for plaintiff.

Richard S. Cohen, U. S. Atty., Portland, Me., David J. Curtin, John J. Miles, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

The present federal income tax refund action involves a dispute between plaintiff Great Northern Nekoosa Corporation (Great Northern)[1] and the Internal Revenue Service (IRS) over the fair market value, for tax deduction purposes, of a 207-acre parcel of land along the Allagash River in northern Maine (the Allagash Parcel). Plaintiff gave the land to the State of Maine in 1969 and claimed a charitable deduction of $1 million, valuing the parcel as a potential hydroelectric power site; the IRS valued the parcel as timberland worth $26,240. Plaintiff now seeks a refund of the amount paid in deficiencies assessed by the IRS after disallowance of the claimed higher deduction.

The action has been tried to the Court sitting without a jury. An evidentiary hearing has been held, focusing particularly on the parcel's potential as a hydroelectric site; and the matter has been comprehen-

---

1. Great Northern Nekoosa Corporation, a Maine corporation, was formed in 1970 by a merger of Nekoosa Edwards Paper Company into Great Northern Paper Company. Any premerger actions referred to in this opinion were performed by Great Northern Paper Company.

sively briefed and argued. Jurisdiction is founded upon 28 U.S.C. § 1346(a)(1). For the reasons set forth below, the Court concludes that plaintiff has failed to show any reasonable likelihood that the parcel would have been developed into a hydroelectric power site within any reasonable period of time after the date of the gift and that plaintiff therefore is only entitled to a deduction of $26,240, the stipulated value of the parcel as timberland. The action is accordingly dismissed.

I

In 1943, Great Northern acquired 640 acres of land from the Maine Central Railroad Company for a total cost of $25,000. Included in this acquisition was the Allagash Parcel, consisting of approximately 207 acres of land along and on both sides of the Allagash River in northern Maine, and within which is a waterfall known as the Allagash Falls. In voting on the acquisition, the Board of Directors of Great Northern referred to the land as an "undeveloped water power site," and the asset was thereafter carried on Great Northern's books principally under the Water Powers Account at an allocated cost of $20,000. The parties have stipulated that a hydroelectric plant could have been built, from a technological standpoint, on the Allagash Parcel. Great Northern, however, never attempted to develop the Allagash Parcel as a hydroelectric power site and never received an expression of interest from, or negotiated with, anyone regarding the development or sale of the Allagash Parcel as a hydroelectric power site. The assessed value of the Allagash Parcel for Maine real estate tax purposes was $12,900, of which $6,000 was allocated to the Allagash Falls itself.

In 1966, the Maine Legislature enacted the Allagash Wilderness Waterway Act, 1965 Laws of Maine, ch. 496, 12 M.R.S.A. §§ 661–680. That Act established an area known as the Allagash Wilderness Waterway (the Waterway) for "the preservation, protection and development of the natural scenic beauty and the unique character of our waterways, wildlife habitats and wil-

derness recreational resources." 12 M.R.S.A. §§ 661, 663(1). The Act also established a "restricted zone" extending at least 400 feet from the watercourse, id. §§ 662(7), 663(3), in which most types of development, without question including construction of a hydroelectric plant, were prohibited, id. § 666. The Act further provided authority for the State, through its Bureau of Parks and Recreation, to acquire land, improvements or interests in land, and water and power rights within the Waterway by lease, gift, or purchase, using the State's eminent domain power if necessary, id. §§ 667, 668, and directed the Bureau to acquire title in fee simple to land within the restricted zone "[a]s soon as possible after availability of funds." Id. § 669. The Allagash Parcel, out to at least 400 feet from the River on either side, admittedly fell within the restricted zone.

In 1968, Great Northern sold other property within the Waterway to the State of Maine at negotiated prices. The Allagash Parcel was not included in the negotiated sale, but was instead given to the State. This gift, which was effectuated by a quitclaim deed dated January 13, 1969, was approved by plaintiff's Board of Directors in a resolution adopted November 20, 1968, authorizing the gift of both the Allagash Parcel and a part interest in a 1351-acre parcel on the shore of Allagash Lake, "provided ... that the aggregate value of the land so to be donated shall not be found to exceed $250,000." An appraiser hired by the State of Maine valued the Allagash Parcel in September 1969 at $26,240 (principally for the value of its timber).

After donating the Allagash Parcel to the State, Great Northern hired Dr. R. Stevens Kleinschmidt, a consulting hydroelectric engineer who had previously been employed by Great Northern, to evaluate the parcel for federal income tax purposes. Based on Dr. Kleinschmidt's determination that the Allagash Parcel was a potential hydroelectric power plant site with a fair market value of at least $1,000,000, plaintiff claimed a charitable contribution deduction of $1,000,000 in its U. S. Corporation In-

come Tax Return for the taxable year ending September 28, 1969.

Upon audit of plaintiff's return, the IRS valued the Parcel at $26,240, based upon the appraisal conducted by the appraiser hired by the State. The IRS accordingly disallowed plaintiff's claimed charitable deduction to the extent that it exceeded $26,240.

On May 4, 1976, plaintiff paid the IRS $689,503 ($494,126 in taxes and $195,377 in interest), the deficiency assessed upon the disallowance of the amount of the claimed charitable deduction in excess of $26,240. Plaintiff thereafter complied with all procedural prerequisites for instituting a federal income tax refund claim and filed this action, seeking refund of the asserted over-assessment, plus statutory interest. The sole issue in dispute is the fair market value of the Allagash Parcel as of the date of the gift to the State. The parties have agreed that if the Parcel had no economic value as a hydroelectric power site in 1969, or if such value was less than $26,240, the fair market value of the Parcel is $26,240, and this action should be dismissed.

## II

The parties are in broad agreement on the legal standards governing this action. It is uncontested that the gift of the Allagash Parcel was a "contribution or gift to or for the use of—A State, . . . made for exclusively public purposes," and that plaintiff is therefore entitled to a charitable deduction under Section 170(c)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 170(c)(1). The parties further agree that the relevant standard for valuation of the Allagash Parcel is that set forth in Section 1.170–1(c)(1) of the Treasury Regulations on Income Tax, 26 C.F.R. § 1.170–1(c)(1), which provides that the amount of the deduction

is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The dispute arises in applying this standard to the facts of this case to determine the fair market value of the Allagash Parcel, and on that issue plaintiff bears the burden of proof. *Helvering v. Taylor*, 293 U.S. 507, 514, 515, 55 S.Ct. 287, 290, 291, 79 L.Ed. 623 (1935).

As plaintiff asserts, in determining fair market value:

The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value [of the property].

*Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934) (market value in condemnation proceeding). And it is clear that, in appropriate circumstances, the potential development of a hydroelectric power plant is a use that may be taken into consideration in determining the fair market value of a site. *See, e.g., Grand River Dam Authority v. Grand-Hydro*, 335 U.S. 359, 372–73, 69 S.Ct. 114, 120–21, 93 L.Ed. 64 (1948). Before any element of value may be attributed to hydroelectric use, however, plaintiff must establish "a reasonable likelihood that the land would be so used in the reasonably near future." *United States v. 320.0 Acres of Land*, 605 F.2d 762, 814 (5th Cir. 1979); *see, e.g., United States ex rel. TVA v. Powelson*, 319 U.S. 266, 275–76, 63 S.Ct. 1047, 1052–53, 87 L.Ed. 1390 (1943); *United States v. Cooper*, 277 F.2d 857, 859–60 (5th Cir. 1960). As the Supreme Court noted in *Olson v. United States, supra,* 292 U.S. at 257, 54 S.Ct. at 709, "Elements affecting value that depend upon events . . . which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value . . . ." The Court is persuaded that in the present case plaintiff has failed to establish even a reasonable possibility that,

as of the date it donated the Allagash Parcel to the State, that Parcel might have been used as a hydroelectric power site. The Court therefore concludes that it would be an exercise in "mere speculation and conjecture" to attribute any value to the site based on its asserted hydroelectric potential.

Plaintiff's entire case rests on the premise that, on January 13, 1969, the Allagash Parcel could have been economically developed as a hydroelectric power site. In fact, however, there were legal obstacles to construction of a hydroelectric plant on the Allagash Parcel which effectively precluded such development in 1969. As noted above, in 1969, the date of the gift, construction of a hydroelectric plant on the Allagash Parcel was absolutely prohibited by Maine's Allagash Wilderness Waterway Act. 12 M.R. S.A. § 666(1).[2] In addition, in 1968, Congress enacted the Federal Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271–1287. That Act prohibits the Federal Power Commission (FPC) from licensing the construction of any dam, powerhouse, or other project works on any river included in the wild and scenic rivers system. Id. § 1278.[3] Although the Allagash River was not originally included, Congress expressly invited the

Governor of Maine to apply for inclusion of the Allagash Wilderness Waterway in the federal system. Id. § 1273(a). That was done in 1970.[4] The Court has no doubt that a willing buyer in 1969 would have anticipated that the State of Maine would choose to enter the Allagash River into the federal wild and scenic rivers system and that any such buyer accordingly would have concluded that for all practical purposes the site could not have been used for a hydroelectric plant at anytime in the foreseeable future.[5]

Plaintiff contends that the Court should ignore both the Maine Allagash Wilderness Waterway Act and the Federal Wild and Scenic Rivers Act in determining the fair market value of the Allagash Parcel in 1969. With respect to the Maine Act, plaintiff notes that it provided authority for the State to take the land in eminent domain, and in effect argues that the same measure of fair market value should apply in this action as would have applied in an eminent domain proceeding. The Court rejects this argument. It is true that, as plaintiff points out, the standard for valuation in condemnation and taxation cases is normally the same: fair market value. *See Great N. Ry. v. Weeks*, 297 U.S. 135, 139, 56

---

2. Development of a hydroelectric power plant obviously would have required major construction within the restricted zone, which extends a minimum of 400 feet in every direction from the River. 12 M.R.S.A. §§ 662(7), 663(3).

3. It is not disputed that the Allagash River is navigable and hence subject to the jurisdiction of the FPC under the Federal Power Act, 16 U.S.C. § 791a *et seq. See id.* § 796(8); *Wisconsin v. Federal Power Commission*, 214 F.2d 334 (7th Cir.), *cert. denied*, 348 U.S. 883, 75 S.Ct. 124, 99 L.Ed. 694 (1954). In fact, plaintiff's expert witnesses conceded that permits from the FPC would have been necessary for construction of a power plant on the Allagash Parcel.

4. Following an application by then Governor Curtis, the Allagash Wilderness Waterway was approved for inclusion in the federal rivers system effective July 19, 1970. *See* 35 Fed.Reg. 11525 (1970).

5. Even apart from the Wild and Scenic Rivers Act, substantial question exists whether the necessary FPC permits could have been obtained for a hydroelectric project on the Allagash

Parcel, in view of the FPC's responsibility to consider the overall public interest in deciding whether to license a project, *Scenic Hudson Preservation Conference v. Federal Power Commission*, 354 F.2d 608, 613–15 (2d Cir. 1965) (interpreting 16 U.S.C. § 803(a)), *cert. denied sub nom. Consolidated Edison Co. v. Scenic Hudson Preservation Conference*, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966), coupled with the State's own determination that it is in the public interest to maintain the Allagash Wilderness Waterway free from development of this type, 12 M.R.S.A. § 661. *See Scenic Hudson Preservation Conference v. Federal Power Commission, supra; Namekagon Hydro Co. v. Federal Power Commission*, 216 F.2d 509, 511–12 (7th Cir. 1954). It is beyond dispute that inability to obtain necessary permits for hydroelectric development would preclude this Court from attributing any value to such use. *United States v. 320.0 Acres of Land, supra*, 605 F.2d at 818–20; *United States v. Cooper, supra*, 277 F.2d at 862; *Public Utility District No. 1 v. City of Seattle*, 382 F.2d 666, 674 (9th Cir. 1967), *cert. dismissed*, 396 U.S. 803, 90 S.Ct. 22, 24 L.Ed.2d 59 (1969).

S.Ct. 426, 428, 80 L.Ed. 532 (1936). But the basis on which fair market value is determined in the two types of proceedings is different. While in an eminent domain proceeding property is to be valued exclusive of any effect on value resulting from the project necessitating the taking, *see, e.g., United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 635–36, 81 S.Ct. 784, 791–92, 5 L.Ed.2d 838 (1961), the controlling regulation here makes absolutely clear that for charitable contribution purposes property is to be valued as of the time of the contribution in light of all facts then relevant. Treas.Reg. 1.170–1(c)(1). It is evident that as of 1969 the restrictions on development contained in the Allagash Wilderness Waterway Act would have been regarded as a particularly relevant fact by any willing buyer. The effect of that Act must, therefore, be considered in determining fair market value in this proceeding. *See, e.g., United States v. 320.0 Acres of Land, supra*, 605 F.2d at 818–20; *Flamm v. Commissioner*, 28 T.C.M. (CCH) 1487, 1489 (1969) (zoning restriction affects value); *United States v. Eden Memorial Park Ass'n*, 350 F.2d 933, 936 (9th Cir. 1965) (same in condemnation case).[6]

As with the Allagash Wilderness Waterway Act, plaintiff asserts that, since the Federal Wild and Scenic Rivers Act contains a provision guaranteeing just compensation for the taking of any vested water right, 16 U.S.C. § 1284(b), the effect of that Act on fair market value also cannot be considered in this proceeding. For reasons set forth above, the Court rejects this argument and concludes that the likely inclusion of the Allagash Wilderness Waterway into the federal wild and scenic rivers system would have been regarded as a highly relevant fact by any willing buyer of the Allagash Parcel in 1969 and must therefore be taken into account in this action.

Even apart from the legal restrictions on the use of the Allagash Parcel discussed above, the Court perceives numerous other deficiencies in plaintiff's evidence on the economic feasibility of a hydroelectric project on the Allagash Parcel, the combined effects of which might well have prevented a willing buyer in 1969 from paying any premium for the property as a potential hydroelectric site.[7] The Court need not address these weaknesses in plaintiff's case, however, for it is firmly convinced that plaintiff has failed to show any reasonable likelihood that the Allagash Parcel could—much less would—have been used for a hydroelectric power plant within any reasonable period after the time of the gift. For this reason, no element of value may be attributed to the asserted hydroelectric potential of the site. *See, e.g., United States ex rel. TVA v. Powelson, supra; Olson v. United States, supra; United States v. 320.0 Acres of Land, supra; United States v. Cooper, supra.*

---

**6.** This is not a case in which a condemning authority seeks to benefit from depressed property values resulting from its own restriction. Rather, Great Northern voluntarily donated the land to the State and took a deduction on its tax obligations to the United States, a different sovereign. *Compare United States v. Certain Lands in Truro*, 476 F.Supp. 1031, 1035 (D.Mass.1979), *with United States v. Eden Memorial Park Ass'n, supra*, and *People v. Southern Pac. Transp. Co.*, 33 Cal.App.3d 960, 965–67, 109 Cal.Rptr. 525, 528–29 (1973).

**7.** For example, plaintiff did not sufficiently establish the existence of any market for the power that would have been produced by a hydroelectric plant at the Allagash Parcel. Plaintiff's primary evidence on market demand was provided by Theodore Grant, a former official of the Maine Public Service Company, the electric utility serving northern Maine. Yet Mr. Grant's testimony showed only that he would have recommended his company investigate the possibility of purchasing power from the hypothetical plant; and even that testimony was based on the unfounded assumption that Great Northern would be developing the project itself. Nor did plaintiff's expert witnesses adequately investigate the possibility of acquiring the land and flowage rights for the substantial storage area that any hydroelectric project would have required. *See, e.g., United States ex rel. TVA v. Powelson, supra*, 319 U.S. at 275–76, 63 S.Ct. at 1052–53 (inability to acquire necessary land precludes valuation based on purported hydroelectric potential); *Olson v. United States, supra*, 292 U.S. at 260, 54 S.Ct. at 710. Finally, plaintiff presented virtually no evidence regarding the possibility of obtaining the necessary state and federal permits for construction of a hydroelectric project on the Allagash Parcel in 1969.

### III

The parties having agreed that if the Allagash Parcel had no economic value as a hydroelectric power site in 1969, the fair market value of the Parcel was $26,240, and this action should be dismissed, judgment will be entered for defendant against plaintiff dismissing the action with prejudice.

IT IS SO ORDERED.