GREAT NORTHERN NEKOOSA COR-
PORATION, Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 82–1751.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1983.

Decided July 18, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 9, 1983.

Mark A. Michelson, Boston, Mass., with whom Mitchell H. Kaplan, and Choate, Hall & Stewart, Boston, Mass., were on brief, for plaintiff, appellant.

Richard Farber, Atty., Tax Div., Dept. of Justice, Washington, D.C., with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Atty., Tax Div., Dept. of Justice, Washington, D.C., and Richard S. Cohen, U.S. Atty., Portland, Maine, were on brief, for defendant, appellee.

Before BOWNES and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

WYZANSKI, Senior District Judge.

The question presented is the *amount* deductible from gross taxable income on account of a parcel of real property donated by the taxpayer, Great Northern Nekoosa Corporation, to the State of Maine for charitable purposes, pursuant to the deduction allowance authorized by § 170(c)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 170(c)(1) (1976).

On August 16, 1943 the taxpayer purchased, from the Maine Central Railroad Company, for $25,000, 640 acres of land. Included was the "Allagash Falls Parcel," a 207-acre tract which lies along and on both sides of the Allagash River in Northern Maine, and which encompasses an undeveloped water power site, Allagash Falls. The taxpayer, for its own accounting, allocated $20,000 of the $25,000 purchase price to its

---

* Of the District of Massachusetts, sitting by des-    ignation.

"Water Powers Account" and $5,000 to its "Timber Land Account."

Although from an engineering viewpoint it would have been feasible to have built upon that site an hydroelectric power plant, the taxpayer at no time either built such a plant or received from any third party a proposal so to use the site.

On February 3, 1966, the State of Maine enacted the Allagash Wilderness Waterway Act, 1965 Me.Laws ch. 496, Me.Rev.Stat. Ann. tit. 12, §§ 661–80 (1964), providing for the preservation, protection and development by the Maine State Parks and Recreation Commission of certain waterways and neighboring lands, including the Allagash Falls Parcel. Section 667 par. 2 of that Act authorized, and indeed Section 669 directed, the Commission to acquire that parcel, *inter alia.*

In accordance with that authority, the Commission began negotiations with the taxpayer. But no agreement had been reached, when on October 2, 1968, the United States enacted the National Wild and Scenic Rivers Act, 82 Stat. 906 (1968), which, as amended, is codified in 16 U.S.C. §§ 1271–87 (1976). That act established a national wildlife and scenic river system, to which (subject to criteria designated by that act and to the approval of the Secretary of the Interior) specified rivers, including that part of the Allagash here involved, could be added upon application by the Governor of the state where the river lay.

Section 7(a) of that Act, 82 Stat. 906, 913–14, 16 U.S.C. § 1278(a), prohibited the Federal Power Commission from licensing the construction of "any dam, water conduit, reservoir, powerhouse, transmission line, or other project works" on any river included in or added to the national system.

On January 13, 1969 the taxpayer donated the Allagash Falls Parcel to the State of Maine.

On April 10, 1970 the Governor of Maine applied for, and received the Secretary's approval of, the inclusion of the Allagash Falls Parcel within the national system.

The taxpayer's expert, Dr. R. Stevens Kleinschmidt, appraised, for income tax deduction purposes, the fair market value of the Allagash Falls Parcel as at least $1,000,-000—an amount he based on his valuation of the property as a potential hydroelectric power plant site—without any discount on account of the Congressional Act. (A.47–48) Using that appraisal, the taxpayer in its Corporate Income Tax Return for the taxable year ending September 28, 1969, claimed and took under § 170(c)(1) of the Internal Revenue Code of 1954 a charitable contribution deduction of $1,000,000 on account of its aforesaid gift.

The IRS allowed only $26,240 of the amount so claimed, such allowance being based on an appraisal made by its expert who valued the Allagash Falls Parcel principally for its timber, and who wholly disregarded the value of the parcel as a potential hydroelectric power site. Accordingly, the IRS assessed the taxpayer for a deficiency of $494,126 in taxes plus $195,377 in interest, or a total of $689,503. On May 4, 1976 the taxpayer paid the IRS that $689,503 and then brought in the district court against the United States this action for a refund.

The district court, after a trial without a jury, dismissed the action and entered judgment for the United States. In its opinion, *Great Northern Nekoosa Corp. v. United States,* 544 F.Supp. 511, 513 (D.Me.1982), the court invoked Treas.Reg. § 1.170–1(c)(1), codified in 26 C.F.R. § 1.170–1(c)(1) (1982), which provides that the amount of a deduction for a charitable contribution made in property other than money

is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The court also referred to the parties' stipulation "that if the [Allagash] Parcel had no economic value as a hydroelectric power site in 1969, or if such value was less than $26,240, the fair market value of the property [was] $26,240, and this action should be

dismissed." 544 F.Supp. at 513. Then the court concluded that on January 13, 1969 when the taxpayer made the gift the Allagash Falls Parcel could not be used as a site for a hydroelectric power plant because "there were legal obstacles to construction of a hydroelectric plant on the Allagash Parcel which effectively precluded such development in 1969." 544 F.Supp. at 514.

The taxpayer appealed. We affirm the judgment of the district court.

We are not concerned with whether when Congress makes property subject to a Congressional encumbrance which (1) permits the State of Maine to transfer part of its land and water territory to a national system, (2) prohibits the use of any transferred territory for private hydroelectric power development and (3) does not explicitly require either the state or the nation to compensate the prior owner, it follows that, by virtue of the Fifth Amendment to the United States Constitution, the federal government must pay the owner of the property just compensation, or whether, by virtue of the Fourteenth Amendment to the United States Constitution or by virtue of the constitution and laws of the State of Maine, that state must pay the owner of the property just compensation. This action does not present those issues.

What concerns us is what was the fair market value of the property on January 13, 1969 when the taxpayer contributed the property to the State of Maine.

■ It is hornbook learning that the taxpayer who seeks the refund has the burden of proving not merely its right to a deduction, but also the amount of the deduction.

■ Two points seem to us obvious. First, on January 13, 1969 there was an encumbrance on that property: (1) the federal government on its own initiative, without the instigation of the State of Maine, by the 1968 Wild and Scenic Rivers Act had already selected the Allagash Falls Parcel as a specifically designated possible part of a meticulously described national wildlife and scenic river system; and if the parcel did become such a part it could not be used

for a hydroelectric power plant; and (2) such encumbrance, existing on January 13, 1969, was such a factor diminishing the previous value of the site as substantially reduced its market value because it would *necessarily* affect the price which would be paid by a willing buyer to a willing seller. *Cf. United States v. 320.2 Acres of Land,* 605 F.2d 762, 818 (5th Cir.1979).

Moreover, as the taxpayer's own expert plainly testified, his $1,000,000 appraisal did not take into account the possible realization of that factor (a realization which would affect adversely the million dollar appraisal).

It cannot, in our opinion, be correctly said that the market value of the property on January 13, 1969 was one million dollars inasmuch as any rational prospective purchase would necessarily take into account the potential realization of that encumbrance.

The appraiser who may in fact have taken into account that factor was the government witness who concluded that the fair market value was only $26,240—a figure which, to be sure, was based on the value of the property as timberland without any allowance for the alternate possibility that the site might be used for hydroelectric power plant purposes. It may very well be that that appraisal was as unrealistic as the taxpayer's because there was always the possibility that, due to inaction by the Governor or the Secretary, the site would never be incorporated in the national system and someone might purchase the site and develop it as a hydroelectric plant.

The upshot is that there was no evidence upon which the court could find the true market value of the site—a value which *ex necessitate* had in some way to take into account the discount appropriate for a realistic, foreseeable, though uncertain event which would occur only if the Governor of Maine made application to have the parcel included in the national system and the Secretary of the Interior acted favorably upon that application.

The district court was bound to conclude that, for want of evidence, (not to mention

**476**

the stipulation referred to by the district court and by us, pp. 474–475, *supra* ), the taxpayer failed to bear its burden of proving a correct valuation higher than the IRS valuation.

It cannot correctly be said that the discount factor missing from the taxpayer's evidence was in some way attributable to the action of the State of Maine. Maine had nothing to do with the Congressionally-induced discount factor. Here the discount factor not taken into account by the taxpayer or its expert was wholly effectuated by the federal government. Moreover, unlike the situation considered in *Urbanizadoro Versalles, Inc. v. Rios,* 701 F.2d 993, 999 (1st Cir.1983), there is no basis for suggesting that the federal government imposed the encumbrance in order "to limit or depress the value of land so as to reduce the expense of a subsequent condemnation."

To be sure, the discount factor attributable to the federal government might at some date after January 13, 1969 be augmented if, following the discount due to the Congressional act, the Governor of Maine made application to the Secretary of the Interior and the Secretary granted his application for inclusion of the Allagash Falls project in the national system. But we are not concerned with that further discount. It is enough for present purposes to emphasize that the discount attributable to Congress was the cause of a real but unappraised diminution in the January 13, 1969 market value of the Allagash Falls Parcel and that discount factor was not shown by the taxpayer who was the party which had the burden of proof.

We may add that it is wholly irrelevant that before the taxpayer on January 13, 1969 made his contribution, the Maine executive officials, acting under the authority given by the Maine legislature, were negotiating with the taxpayer for the purchase of the Allagash Falls site. The possibilities contingent on the outcome of that negotiation were not taken into account in appraisals made by any witness or testimony and, therefore, did not form an evidentiary basis for any permissible finding of market value.

We need not consider whether there were other reasons why that contingent factor would have been irrelevant.

*Affirmed.*