92 B.R. 394 (1988)
In the Matter of Robert L. CRAIG, Debtor.
Robert L. CRAIG, Debtor and Debtor in Possession, By and Through the OFFICIAL CREDITORS COMMITTEE, Plaintiff,
v.
MINDEN EXCHANGE BANK & TRUST CO., A Banking Corporation, Defendant.
Bankruptcy No. BK85-2418, Adv. No. A87-0184.
United States Bankruptcy Court, D. Nebraska.
November 1, 1988.
David L. Crawford, Schmid, Mooney & Frederick, P.C., Omaha, Neb., for plaintiff, Official Creditors' Committee.
William R. Hadley, Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., Omaha, Neb., for defendant, Minden Exchange Bank & Trust Co.

MEMORANDUM OPINION
JOHN C. MINAHAN, Jr., Judge.
On the eve of bankruptcy, the debtor, Robert Craig, granted a mortgage to the defendant, the Minden Exchange Bank & Trust Company (the "Bank"). In partial consideration for the mortgage, the Bank loaned funds to the debtor, which were immediately used by the debtor to make a payment to the Bank on an obligation of a third party to the Bank which the debtor had guaranteed. The Official Creditors' Committee, after having been granted authority to do so, brought this action to avoid the payment or, alternatively the mortgage, as a preference under 11 U.S.C. § 547, a fraudulent conveyance under § 548, or under applicable state law pursuant to § 544. The Bank argues that the transaction did not involve a preference or a fraudulent conveyance. The Bank moved for directed verdict on the preference issue, in which it argued that the plaintiff did not meet its burden of establishing preferential effect under 11 U.S.C. § 547(b)(5).
For the reasons stated below, the court will avoid the mortgage in property of the estate.

FINDINGS OF FACT
The debtor is in a Chapter 11 proceeding filed on October 22, 1985. The plaintiff is the Official Creditors' Committee and has been granted authority to bring this action. The defendant Bank is a corporation doing *395 business in the State of Nebraska. Prior to July 30, 1985, a corporation known as "Minden D & J, Inc." was indebted to the Bank in the approximate amount of $454,997.00. This amount was reduced to $399,997.00 by a $55,000.00 payment upon the liquidation of Minden D & J, Inc. The obligations of Minden D & J, Inc. to the Bank were unsecured, but they were personally guaranteed by the debtor and his wife. The guaranty was unsecured. The debtor's wife is not a party in this proceeding.
On July 30, 1985, eighty-three (83) days prior to the filing of bankruptcy by the debtor, the transaction giving rise to the present lawsuit occurred between the debtor and the Bank. In this transaction:
1. The debtor and his wife, who is not a debtor in bankruptcy, signed a promissory note in the amount of $250,000.00 payable to the Bank;
2. In order to secure the $250,000.00 note, the debtor and his wife gave a mortgage to the Bank on 880 acres of land, of which 560 acres is owned by the debtor, and 320 acres is owned by his wife;
3. The Bank opened a separate loan folder at the Bank indicating that the debtor and his wife had become directly obligated to the Bank on the note and related mortgage;
4. The Bank cancelled the obligation of debtor and his wife on their guaranty of the indebtedness of Minden D & J, Inc.;
5. The Bank disbursed the $250,000.00 loan proceeds by means of a bookkeeping entry which indicated that the obligations of Minden D & J, Inc., had been reduced by $250,000.00;
6. The Bank would not have made the $250,000.00 loan unless the Bank was permitted to retain the loan proceeds and apply them as a payment on the guaranty of the obligation of Minden D & J, Inc.;
7. The 880 acres mortgaged to the Bank had a value of between $250,000.00 and $270,000.00 at the time the transfer was made. I base this finding upon the deposition of Mr. Armstrong, executive vice-president of the Bank, where he stated that the Bank had obtained an estimate of the value of the land from a customer of the Bank who is in the real estate business. The estimate was $250,000.00 to $270,000.00. This conclusion as to value is supported by the inference that the Bank acted in its own best economic interest. Given the fact that the Bank was owed $399,997.00, it is unreasonable to conclude that the Bank permitted the debtor to retain equity in the 880 acres. Of course, it did not. The Bank was determined to secure up its position by obtaining a lien on everything of significant value owned by the debtor. Mr. Armstrong testified that had there been other assets, the Bank would have taken them. The Bank set the amount of the mortgage note at the approximate value of the mortgaged 880 acres; and
8. In addition to the Bank, other creditors hold unsecured claims against the debtor. First National Bank of Minden is owned $133,678.00.

DISCUSSION
The plaintiff claims, first, that the grant of $250,000.00 note and mortgage and the credit of $250,000.00 on the debt guaranteed by the debtor constituted a fraudulent conveyance to the Bank. Secondly, the plaintiff claims that the $250,000.00 credit was a payment on an antecedent debt, and a preference. The plaintiff argues that the amount to be set aside as a preference is $159,090.89. This amount is calculated by plaintiff as the proportion of the $250,000.00 loan which is attributable to the 560 acres of land mortgaged by the debtor. As to the issue of preferential effect, the plaintiff claims that it has shown that the land has a value of approximately $250,000.00. The plaintiff argues that if the transaction in question had not occurred, the Bank would not have received the entire value of the land in a Chapter 7 liquidation, but would have shared the value with the other creditors. Thus, argues the plaintiff, it has shown that the Bank will receive more by the transaction than it would have in a case under Chapter 7 if the transaction had not occurred.
*396 The Bank, on the other hand, argues that there is no § 547 preference because the plaintiff failed to establish preferential effect under § 547(b)(5). The Bank argues that plaintiff has failed to present competent evidence as to the land's value. Thirdly, the Bank argues that even if the plaintiff has met its burden of proof under § 547(b)(5), the mortgage transaction is excepted under § 547(c)(1) from the avoidance powers of the debtor in possession. The Bank alleges that the release of the debtor from liability on the Minden D & J, Inc. guaranty constitutes new value contemporaneously exchanged for the July 30, 1985 note and mortgage from the debtor. Finally, the Bank argues that the granting of a mortgage to secure an antecedent debt is not a fraudulent conveyance pursuant to § 548.
Preference Analysis
In relevant part, 11 U.S.C. § 547(b) provides:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property 
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made 
(A) on or within 90 days before the date of the filing of the petition;
. . . . .
(5) that enables such creditor to receive more than such creditor would receive if 
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
Two transfers of property of the debtor were made. A transfer of an interest in debtor's 560 acres of real estate took place under the mortgage given by the debtor to the Bank. The second transfer took place when the $250,000.00 proceeds of the loan were retained by the Bank and applied to the guaranty obligation of the debtor. The debtor had an interest in the $250,000.00, but there is a dispute as to the amount of debtor's interest in these funds.
Counsel for the plaintiff argues that the court can make a finding of fact as to the dollar amount of the preferential payment by allocating the loan proceeds to the debtor and his wife pro rata based on the number of acres each mortgaged to the Bank to secure the $250,000.00 loan. Under this approach, one could conclude that since the Bank loaned $250,000.00 secured by a total of 880 acres, 560/880 × $250,000.00 or $159,090.89 represents the loan proceeds attributable to the debtor's 560 acres and that 320/880 × $250,000.00, or $90,090.11 represents the loan proceeds attributable to the wife's 320 acres. Thus, the plaintiff argues, the debtor made an avoidable payment of $159,090.89 to the Bank and that the rest of the $250,000.00 represents a payment made to the Bank by the debtor's wife. Counsel for the Bank strenuously objected to this methodology on the theory that there is no evidence of record as to the value of debtor's 560 acres and the wife's 320 acres. The debtor's counsel is correct in his assertion that there is no evidence of record that would permit the court to make a finding as to the relative value of the 560 acre and 320 acre tracts. There is no evidence as to the current use of the properties, or whether both are crop land, pasture land or whether either tract is irrigated or whether there are improvements on the tracts and so forth. The methodology proposed by plaintiff for determining the value of debtor's 560 acres assumes that the 560 acre and 320 acre tracts have the same value per acre. This fact is not established by the evidence. Therefore, plaintiff's proposed method for determining the amount of debtor's interest in the $250,000.00 is not adopted.
Under § 547(b), the debtor may avoid a transfer "of an interest of the debtor" in property. The record before me does not *397 provide a factual basis for me to exactly quantify the interest of the debtor in the $250,000.00. It is certainly clear, however, that the debtor had an interest in the funds. The $250,000.00 were proceeds of a loan on which the debtor was jointly and severally liable. Debtor and his wife each had an undivided interest in the $250,000.00. Whatever the amount of the debtor's interest, his interest in the $250,000.00 was, in fact, transferred to the Bank.
The first element of § 547(b) is thus satisfied. The debtor made a transfer of the mortgage on 560 acres and a transfer of debtor's interest in $250,000.00 to the Bank. Both transfers by the debtor were to a creditor. The Bank was a creditor of the debtor under the debtor's guaranty of the obligations of Minden D & J, Inc. to the Bank.
Under § 547(f), the debtor is presumed insolvent during the 90 days immediately preceding the filing of the petition and both transfers were made within the 90 day period. Thus, the third and fourth elements of a preference are satisfied under § 547(b)(3) and (b)(4).
The difficult issues are whether the requirements of § 547(b)(2) and (b)(5) have been satisfied.
The transfer of the debtor's interest in the $250,000.00 to the Bank was on account of the pre-existing guaranty obligation and was therefore on account of an antecedent debt under § 547(b)(2).
The Bank argues that the transfer of the mortgage was in consideration for a new loan in the amount of $250,000.00 and a release of debtor and his wife from their guaranty obligations to the Bank. Thus, argues the Bank, the mortgage was not given for antecedent debt, but was given for new value. If the loan transaction between the Bank and the debtor are viewed in isolation as separate and distinct from the transaction involving the payment on the guaranty obligation, the Bank's argument would have validity. The Bank loaned $250,000.00 in exchange for a mortgage  that alone does not constitute a preference. However, the form or structure of the transaction does not control the substantive results under the Bankruptcy Code. These were not isolated transactions. First, the new loan from the Bank to the debtor does not constitute new value. The Bank would not have made the $250,000.00 loan unless the debtor agreed to permit the Bank to apply the proceeds of the loan to the guaranty agreement. The transfer of the $250,000.00 proceeds onto the antecedent debt brought no new value to the debtor's estate. See 11 U.S.C. § 547(a)(2). Second, the Bank's release of unpaid amounts on its guaranteed obligations is not new value under § 547. See In re Energy Cooperative, Inc., 832 F.2d 997, 16 B.C.D. 1156 (7th Cir.1987). Likewise, forebearance from collection efforts are not considered new value under § 547. See In re Air Conditioning, Inc. of Stuart, 845 F.2d 293, 17 B.C.D. 1385 (11th Cir.1988); Drabkin v. A.I. Credit Corp., 800 F.2d 1153, 15 B.C.D. 335 (D.C.Cir.1986). I thus conclude, that the granting of the mortgage was, in fact, for or on account of an antecedent debt.
In substance, the Bank converted an unsecured unliquidated contingent guaranty claim against the debtor to a claim secured by a mortgage. Had there been no antecedent guaranty obligation, this transaction would never have taken place. Under these circumstances, I conclude that the transfer of the mortgage was in consideration for antecedent debt.
The final issue is whether § 547(b)(5) is satisfied. Here the question is whether the evidence before the court will support a finding that the transfers had a preferential effect allowing the Bank to receive more than it would have received had the transfers not been made and the debtor filed a Chapter 7 liquidation case under the Bankruptcy Code.
In determining whether or not the transfers had a preferential effect, the court cannot consider the bankruptcy schedules and statement of affairs since they were admitted in evidence for limited purposes after an objection to their admissibility had been made by the Bank. Even if the court takes judicial notice of the bankruptcy schedules and statement of affairs, it is not *398 appropriate for the court to conclude that the facts stated in the schedules and statement of affairs are true and accurate. The objection made by the Bank went to the reliability and accuracy of the information set forth on the schedules. The objection was withdrawn and the schedules and statement of affairs were then admitted by stipulation of the parties for the limited purpose of showing that the debtor owned the real estate. The Bank contends that the court may properly consider the information set forth on the bankruptcy schedules and statement of affairs because they are before the court as part of other exhibits. I will not predicate findings of fact thereon because the reliability and accuracy of the information set forth therein was questioned by the Bank's counsel, who was deprived of the opportunity to elaborate on his objection because the schedules and statement of affairs were offered for limited purposes upon stipulation of the parties.
Without the schedules, the court cannot perform a detailed hypothetical liquidation analysis to determine what dividend would be received by the Bank if the preference were set aside and the debtor filed a Chapter 7 liquidation. In other words, I cannot quantify the amount of preferential effect under § 547(b)(5).
However, prior to the transaction, the Bank was an unsecured creditor with a contingent claim against debtor in the amount of $399,997.00. After the transaction took place, the Bank held a $250,000.00 note of the debtor secured by 560 acres of debtor's land. The land is the only substantial asset in the bankruptcy estate. There are other unsecured creditors in the case. The First National Bank of Minden is owed approximately $133,000.00. Although I cannot calculate the dollar amount of preferential effect of the transactions between the Bank and the debtor, I can and do, however, conclude that the requirements of § 547(b)(5) are met. The Bank would clearly receive more on its $250,000.00 secured claim than it would have received on its unsecured guaranty claim in a Chapter 7 case.
I reach this result notwithstanding the fact that the plaintiffs had not adduced sufficient evidence to permit the court to construct a hypothetical Chapter 7 liquidation analysis. See In re Tenna Corporation, 801 F.2d 819 (6th Cir.1986). I find no Eighth Circuit Court of Appeals decision on point and conclude that it is not necessary to quantify the amount of preferential effect under § 547(b)(5) with actuarial certainty. It is sufficient under § 547(b)(5) for the court to determine that the effect of the transfer was to pay more to the Bank than it would have received in a Chapter 7 case.
In its brief, the Bank argues that the granting of the mortgage and payment of the $250,000.00 did not result in the Bank being paid more than it would receive in a hypothetical Chapter 7 liquidation. The Bank argues that if the mortgage transaction is set aside, the debtor's guaranty would be revived and the Bank would have a claim in the Chapter 7 case for $399,997.00 (i.e., its total claim of $454,997.00, less $55,000.00 it received upon the liquidation of Minden D & J, Inc.). Unsecured claims in the Chapter 7 would consist of the $399,997.00 claim of the defendant, Minden Exchange Bank, the $133,678.00 claim of the First National Bank of Minden, and the claims of other unsecured creditors. The total unsecured Chapter 7 claims would be at least $533,675.00, with the defendant Bank's claim comprising 74.95 percent, or less, of the unsecured class. In its liquidation analysis, the Bank assumes that the mortgaged property has a net liquidation value of $346,897.00. The Bank then argues that its 74.95 percent of this value would entitle it to a Chapter 7 distribution of $260,000.00, an amount greater than debtor's obligation to the Bank under the $250,000.00 note and mortgage. Thus, the Bank concludes there is no preferential effect because the Bank is not receiving an amount greater under the mortgage transaction than it would in a hypothetical Chapter 7 liquidation.
The Bank's analysis is premissed upon an erroneous assumption as to the value of the mortgaged property. My hypothetical Chapter 7 liquidation analysis is as follows:
*399 1. Under § 547(f), there is a presumption that the debtor was insolvent during the ninety (90) days preceding bankruptcy. I therefore presume that the debtor was insolvent during this period and insolvent for purposes of the hypothetical Chapter 7 liquidation analysis. I also find that debtor's obligation exceeded his assets today and on the date the transfer was made.
2. The Bank's unsecured guaranty claim is $399,997.00.
3. Unsecured claims would exceed $533,675.00, consisting of the Bank's claim of $399,997.00, First National Bank's claim of $133,678.00, and the claims of other creditors.
4. The subject 560 acres of real estate mortgaged by the debtor, Robert Craig to the Bank has a fair market value of less than $270,000.00. The entire 880 tract has a value of $250,000.00 to $270,000.00. For purposes of illustrative analysis, I hereafter use $250,000.00 as the value of the 560 acres owned by the debtor.
5. The 560 acres is the only asset of debtor that is of significant value.
Given these findings of fact, I conclude that in a Chapter 7 liquidation the maximum amount that the defendant Bank would receive would be 74.95 percent of the value of the 560 acres  or $187,375.00 (i.e. $250,000.00 × 74.95 percent). The amount that the Bank would actually receive in a Chapter 7 liquidation would be even less than $187,375.00 for three reasons. First, Chapter 7 administrative expenses and the trustee's fee would be paid prior to distribution to unsecured creditors, including the Bank. Second, the presence of additional unsecured creditors would reduce the percentage of the Bank's dividend. Third, the court based its finding that the debtor's 560 acres was worth less than $270,000.00 on a finding that the entire 880 acres belonging to the debtor and his wife is worth between $250,000.00 and $270,000.00. The actual value of the debtor's 560 acre portion is obviously much less than $270,000.00 and this would further reduce the funds available for distribution to unsecured creditors in a Chapter 7 liquidation. In a Chapter 7, the Bank would be forced to share the proceeds of the 560 acres with other unsecured creditors and it would receive a maximum of only 74.95 percent of funds distributed to unsecured creditors. If, on the other hand, the preferential transfer of $250,000.00 and the mortgage are permitted to stand, the Bank will retain the $250,000.00 payment, and realize 100 percent of the proceeds of the debtor's 560 acres, as limited by the amount of the note. Based on these facts, I conclude that the requirement of § 547(b)(5) is met. The Bank will receive more under its mortgage transaction than it would receive in a hypothetical Chapter 7 liquidation.
It would not be equitable to both set aside the mortgage held by the Bank and to recover from the Bank the payment made of debtor's interest in the $250,000.00. The appropriate remedy, I conclude, is to set aside and avoid the mortgage in the 560 acres.
The Sixth Circuit Court of Appeals, in a case under the Bankruptcy Act, made the following statement which is appropriate in this case:
From time in memorial, Courts of law have refused to sanction acts done by indirection, which, if performed directly, would be barred by law. Courts of bankruptcy have from the beginning placed emphasis upon the purpose and effect of a given transfer irrespective of the manner in which it was accomplished  that is, regardless of whether such transfer was a direct or indirect transaction. The principle has been firmly established that a transfer which indirectly evades the provisions of the Bankruptcy [Code] by effecting an undue preference to a creditor is voidable.
Steel Structures, Inc. v. Star Manufacturing, 466 F.2d 207 (6th Cir.1972).
The result on the facts of this case should be the same as if the Bank had simply obtained a mortgage on the eve of bankruptcy to secure the debtor's guaranty obligation. Such a transaction would have been avoidable as a preference. In substance, that is what has occurred in this case, and the mortgage should be avoided.
*400 The mortgage should be preserved for the benefit of the estate under § 551 of the Bankruptcy Code.
Fraudulent Conveyance Analysis
I conclude that the mortgage on the 560 acres may also be avoided under 11 U.S.C. § 548(a)(1), which provides that the debtor may 
(a) . . . avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily 
(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or. . . .
The requisite element of intent under this statute is established by the existence of various "badges of fraud" which are marks, signs or indicia from which fraudulent intent may be inferred or presumed. There are several badges of fraud present in this mortgage transaction.
First, a transaction in anticipation of litigation is a sign of fraud, especially when the transfer greatly reduces the debtor's assets. See Arnold v. Dirrim, 398 N.E.2d 442 (Ind.App.1979); Bank of Sun Prairie v. Hovig, 218 F.Supp. 769 (W.D.Ark.1963). Second, a transaction outside one's usual course or mode of doing business is a badge of fraud. See Sun Prairie, 218 F.Supp. at 716. Third, the mortgage transaction occurred while the debtor was insolvent. See Sun Prairie, 218 F.Supp. at 776; Springfield Ins. Co. v. Fry, 267 F.Supp. 693 (N.D.Okla.1967). The amount of debtor's obligation on the guaranty exceeded the value of his assets. Lastly, the mortgage transaction resulted in a transfer of all debtor's property of substantial value, which is a sign of fraud. See Duncan v. First Nat'l Bank of Cartersville, 597 F.2d 51 (5th Cir.1979). Where there is a concurrence of several such badges, an inference of fraudulent intent may be warranted. Based on the presence of these badges of fraud, I find as a question of fact that the debtor, Robert L. Craig, granted a mortgage to the Bank with the intent to hinder, defraud or delay creditors other than the Bank.
Based on the principles and rules articulated by the Supreme Court in Dean v. Davis, 242 U.S. 438, 444, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917), I also conclude that the mortgage transaction was made with the requisite intent to defraud creditors. The Supreme Court stated:
[a] transfer, the intent (or obviously necessary effect) of which is to deprive creditors of the benefits sought to be secured by the Bankruptcy Act: hinders, delays or defrauds creditors within the meaning of § 67e. . . . Where the advance is made to enable the debtor to make a preferential payment with bankruptcy in contemplation, the transaction presents an element upon which fraud can be predicated.
Thus, when a bank loans funds to a customer to enable the customer to make a preferential payment of the loan proceeds back to the bank on a separate unsecured loan and further to enable the bank to obtain a mortgage and to thereby convert its unsecured claim to a secured claim, the transaction is avoidable under § 548(a)(1). See Dean v. Davis; Bankruptcy Act § 67d(3). I conclude that the principles embodied in Dean v. Davis have survived the Bankruptcy Reform Act and that they supplement 11 U.S.C. § 548. See generally, In re American Properties, 14 B.R. 637 (Bkrtcy.D.Kan.1981). My reliance on Dean v. Davis is limited to conveyances occurring within ninety (90) days of bankruptcy. I do not address the question of whether conveyances outside the ninety (90) day period would be subject to the same reasoning.
The rule that certain transfers made in contemplation of bankruptcy with the intent of enabling the debtor to make a preference are avoidable as fraudulent, as enunciated in Dean v. Davis, was generally codified is § 67d(3) of the Bankruptcy Act. Section 67d(3) was not incorporated into the Bankruptcy Reform Act because of concern *401 that the rule discouraged lenders from making consolidation loans availing debtors an opportunity to avoid bankruptcy. See Report of the Commission on Bankruptcy Laws, H.R.Doc. No. 93-137, 93rd Cong. 1st Sess., pt. 2, at 177 (1973). The omission of § 67d(3) from the Bankruptcy Code does not negate the continuing applicability of the doctrine in this case, however. My holding does not act as an impediment to consolidated loans.
It is important to note two facts in this case which will limit the applicability of my holding. First, this case involves a two party transaction. The Bank made a secured loan to enable the debtor to make a preferential payment back to the Bank. Second, this case involves a transaction that took place in the ninety (90) day period preceding bankruptcy. Thus, the holding in this case should not discourage lenders from entering into consolidation loans when the loan proceeds are used by the debtor to make payments to third parties.
I therefore conclude that the granting of the mortgage on the 560 acres is avoidable as a preference under § 547 and as a fraudulent conveyance under § 548. Since the mortgage is avoidable under § 548, it is not necessary to determine whether the mortgage may also be avoided under Nebraska law pursuant to § 544.
A separate order will be entered consistent herewith.