123 B.R. 605 (1991)
In the Matter of Joseph Delynn SMITH d/b/a J.D. Management Services and G.L. Properties, Debtor.
R. David BOYER, Trustee, Plaintiff/Appellee
v.
BAKER & SCHULTZ, INC., Defendant/Appellant.
Bankruptcy No. 87-11677, Adv. No. 88-1080, Civ. No. F 90-146.
United States District Court, N.D. Indiana, Fort Wayne Division.
February 5, 1991.
*606 R. David Boyer, Helmke, Beams, Boyer & Wagner, Fort Wayne, Ind., for plaintiff/appellee.
*607 William I. Kohn, Scott M. Keller, Barnes & Thornburg, South Bend, Ind., for defendant/appellant.

ORDER
WILLIAM C. LEE, District Judge.
This matter is before the court on appeal from the bankruptcy court's order of October 26, 1989, denying the motion for summary judgment filed by Baker & Schultz and granting the motion for summary judgment filed by the Trustee. The summary judgment order instructed the appellant to return $121,345.11 to the Trustee as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code. The issue on appeal is whether, pursuant to 11 U.S.C. § 547(b), the Trustee was entitled to recover as a preferential transfer the amount of $121,345.11 paid to the appellant from the debtor's bank account within 90 days prior to involuntary bankruptcy proceeding and within one day after debtor had deposited into his bank account a check for $125,000.00 which check was dishonored. Having examined the record and having heard the respective positions of the parties, the order of the bankruptcy court is REVERSED.

Factual Background
On February 28, 1987, Baker & Schultz loaned Joseph Smith d/b/a J.D. Management Services and G.L. Properties ("Debtor"), $105,000.00. In satisfaction of this loan, Debtor, on September 22, 1987, delivered to Baker & Schultz a check (check no. 1141) in the amount of $121,345.11 drawn on J.D. Management Services' checking account with Fort Wayne National Bank ("FWNB"). Baker & Schultz then deposited check no. 1141 at the First State Bank of Decatur. At the time the Debtor delivered check no. 1141 to Baker & Schultz, the Debtor's checking account contained only $163.58 of actual funds.
On September 22, 1987, a check in the amount of $125,000.00 was deposited in Debtor's checking account with FWNB and Debtor's checking account was thereafter provisionally credited in the amount of $125,000.00. On September 23, 1987, FWNB paid check no. 1141 which had been presented for payment by the First State Bank of Decatur. When FWNB made final payment to Baker & Schultz on check no. 1141, Debtor's checking account contained only $163.58 of Debtor's actual funds and $125,000.00 of provisional credit.
On September 28, 1987, FWNB learned that the $125,000.00 check which had been deposited in the checking account failed to clear. FWNB then "charged back" the provisional credit pursuant to Indiana Code § 26-1-4-212, creating a $121,290.53 overdraft in the checking account.
After realizing that it made final payment to Baker & Schultz when Debtor's checking account did not contain sufficient funds, FWNB sought a return of the $121,290.53 overdraft from Baker & Schultz. Baker & Schultz refused to return the funds to FWNB because FWNB's payment to Baker & Schultz constituted "final payment" pursuant to Indiana Code § 26-1-4-213.
On December 10, 1987, FWNB initiated an involuntary Chapter 7 bankruptcy proceeding against the Debtor. On July 22, 1988, the Trustee filed a Complaint to Recover Preferential Transfer ("Complaint"). Through the complaint, the Trustee sought to recover the entire $121,345.11 FWNB paid to Baker & Schultz as a preferential transfer of property of Debtor's estate pursuant to § 547(b) of the Bankruptcy Code. On November 12, 1988, Baker & Schultz filed a motion for partial summary judgment. On December 7, 1988, the Trustee filed a motion for summary judgment contending that the Debtor's estate was entitled to recover the entire $121,324.11 from the appellant as a preferential transfer. A hearing was held on the respective summary judgments motions. On October 26, 1989, the Bankruptcy Court entered an order, finding that no material questions of fact existed and granted summary judgment in favor of the Trustee. Baker & Schultz was ordered to return the $121,354.11 to the Trustee as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.
*608 On November 3, 1989, Baker & Schultz filed a Motion for Reconsideration. On November 8, 1989, Baker & Schultz further filed a Motion to Stay Pending Reconsideration and Appeal and for Order Approving Escrow Agreement. The Bankruptcy Court entered an order approving the Motion to Stay and Approval of Escrow on December 11, 1989. On January 10, 1990, the Bankruptcy Court held a hearing on the Reconsideration Motion and on June 19, 1990, entered an order denying the Reconsideration Motion. On June 26, 1990, the appellant timely filed a Notice of Appeal.

Decision

I. Standard of Review
The bankruptcy court's factual findings will not be set aside unless they are clearly erroneous. The rules of bankruptcy procedure provide the applicable standard of review. Rule 8013 reads:
On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
The clearly erroneous language of the rule tracks the language found in Fed.R. Civ.P. 52(a). Cases construing the standard under Rule 52(a) are equally applicable to bankruptcy cases. Matter of Louisiana Industrial Coatings, Inc., 53 B.R. 464, 467 (E.D.La.1985). The Supreme Court reaffirmed its long standing definition of this standard: "a finding is `clearly erroneous' when . . ., the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
Unlike the "clearly erroneous" standard used to review factual findings of the bankruptcy court, legal conclusions are subject to de novo review. In re Global Western Development Corp., 759 F.2d 724, 726 (9th Cir.1985). In addition, "the reviewing court must determine whether the trial court applied the proper legal standard to the facts." In re Stratton, 23 B.R. 284, 287 (D.S.D.1982).

II. § 547(b) Avoidable Preference
Section 547(b) of U.S. Bankruptcy Code, sets forth the elements of an avoidable preference.
(b) any transfer of an interest of the debtor in property;
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such debt was made;
(3) made while the debtor was insolvent;
(4) made (A) on or within 90 days before the date of the filings of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if
(A) the case were a case under chapter 7 of this title
(B) the transfer had not been made, and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
The Trustee must prove each and every one of the elements in order to avoid a preference under this section. The appellant argues, however, that the "provisional credit" granted by FWNB is not property or an interest of the debtor, therefore, the trustee failed in making a prima facie case of a preferential transfer. Section 541 of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. For purposes of §§ 541 and 547, state law determines whether a debtor has any legal or equitable interest in a particular item. See 4 Collier on Bankruptcy, *609 ¶ 541.02 at 541-13 and ¶ 547.03[2] at 547-23 (15th ed. 1990). Moreover, it is well established that a trustee in bankruptcy succeeds only to the debtor's title and rights in property and takes such property subject to the same restrictions that existed at the commencement of the case. See Matter of Jones, 768 F.2d 923, 927 (7th Cir.1985); Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir.) [Whatever rights debtor has in property at commencement of the case continue in bankruptcy, "no more, no less"; § 541 is not intended to expand the debtor's rights against others beyond those existent at the commencement of the case], cert. denied, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).
Indiana Code § 26-1-4-213 governs when provisional credit becomes available for withdrawal by a bank account holder. In pertinent part, this section provides:
(4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right (a) in any case where the bank has received a provisional settlement for the item,  when such settlement becomes final and the bank has a reasonable time to learn that the settlement is final;
Ind.Code Ann. § 26-1-4-213(4)(a) (West 1980).[1] White and Summers provide the following explanation regarding the status of provisional credit:
Many bank customers assume that when they deposit a check into their account, the check is "good" immediately and can be drawn against the same as cash. This can be a costly misunderstanding. Banks usually put a hold (commonly called as delayed funds availability or DFA) on uncollected funds represented by a deposited check. The length of the hold varies from bank to bank, and also varies depending on whether the check is local or nonlocal. On the average, however, banks put holds of four to seven calendar days on local checks. Nonlocal checks, both in state and out of state, are commonly held for ten to fifteen calendar days.
J. White & R. Summers, Uniform Commercial Code, § 18-2 (3rd ed. 1988).
In the present case, when the $125,000.00 check was deposited into the Debtor's checking account, FWNB granted Debtor a provisional credit for $125,000.00. As a collecting bank for the $125,000.00 check, FWNB then forwarded this check for payment. FWNB was not required to provide actual funds for the $125,000.00 provisional credit until and unless it received final settlement by and through the payor bank. Ind.Code. Ann. § 26-1-4-213(1)-(3) (West 1980 & Supp. 1990). FWNB never received final payment, therefore, they were never obligated to provide actual funds for the provisional credit. Consequently, the debtor's interest in the amounts provisionally credited would be unconditional only after final settlement by the payor bank. Because the Debtor had no right to the amounts provisionally credited until settlement became final, the bankruptcy estate was not entitled to the funds. Moody, 734 F.2d at 1213.
In support of their position, appellants rely on Equitable Bank of Littleton, N.A. v. Jobin (In re Twenty Four Hour Nautilus Swim & Fitness Center, Inc.) 81 B.R. 71 (D.Colo.1987). In Jobin, the debtor was a health club enterprise which permitted its members to pay their membership fees with credit cards. The health club and its bank entered into an agreement whereby the bank agreed to provisionally credit the health club's account for each credit card draft the health club received. The provisional credits were to become final only after the bank received final settlement from the credit card company. The bank could "charge back" an equal amount of the health club's provisional credit. When the health club filed a petition for bankruptcy, it had a certain amount of provisional credits in its bank account based on credit card drafts which had not been finalized. *610 When the credit card company notified the bank that some of the credit card drafts were disputed charges, the bank filed a motion for relief from the automatic stay to "charge back" an equal amount of the provisional credit from the health club's account.
Affirming the decision of the bankruptcy court, the district court in Jobin found that the health club did not have a property interest in the provisional credit until such provisional credit became final. Jobin, 81 B.R. at 74. In essence, the district court ruled that the health club had only a contingent right to the provisional credit and could only have an absolute property interest if the bank received final settlement on the credit card drafts. Moreover, although it affirmed the bankruptcy court's ruling that the bank could "charge back" the health club's provisional credit, the district court expressly disagreed with the bankruptcy court's conclusion that the health club's bankruptcy estate included an equitable interest in the provisional credit. Jobin, 81 B.R. at 74 n. 2.
The Trustee argues that Jobin is distinguishable from the case at bar because it involved credit card provisional credits as opposed to checking account provisional credits. This court is not prepared to accept such a technical reading of the case. The principal is the same, whether the provisional credit relates to checks or credit card charges  provisional credits are final only after the bank has received final settlement. The law should not distinguish between final settlement made by a payor bank or a credit card holder. Thus, the funds FWNB used to pay check no. 1141 never constituted property of the Debtor and could not have been included in Debtor's bankruptcy estate. Therefore, by paying check no. 1141, FWNB assumed the appellants' position as a general unsecured creditor of Debtor.
Generally, a transfer of money or property by a third person to a creditor of a debtor that does not issue from the property of the debtor is not a preference. "[W]here the only change is in the identity of the creditor, without a corresponding depletion of the bankruptcy estate, one policy underlying the power to avoid a preference has not been offended by the transfer." In re Titan Energy Corp., 82 B.R. 907 (S.D.Ohio 1988). Thus, payments made by an indorser, surety or guarantor do not effect a preference because there is no transfer of an interest of the debtor in property. See e.g., In re North Shore & Central Illinois Freight Co., 30 B.R. 377, 379 (N.D.Ill.1983) [payments by the issuer of a letter of credit cannot be recovered as a preference because they are not transfers of the debtors property]; In re Page, 18 B.R. 713 (D.D.C.1982) [payment by issuer of letter of credit was not a post petition transfer prohibited by § 549 because "[t]he letter of credit and its proceeds represents property of the issuer, not the debtors."]. "Only when a creditor receives secured letter of credit to cover an unsecured antecedent debt will [the beneficiary of the letter of credit] be subject to a preferential attack under 11 U.S.C. § 547(b)." Matter of Compton Corp., 831 F.2d 586, 595 (5th Cir.1987).
Finally, a transfer must diminish directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one. Miller v. Fisk Tire Co., 11 F.2d 301, 104 (D.Minn.1926). Since the $125,000.00 was not property of the estate, the estate was not diminished.

Conclusion
Accordingly, on the basis of the foregoing, the court hereby REVERSES the bankruptcy court's order of October 26, 1989, denying the motion for summary judgment filed by Baker & Schultz and granting the motion for summary judgment filed by the Trustee. The Trustee's preference recovery cannot exceed $163.58.
NOTES
[1] Effective April 5, 1989, P.L. 243-1989 rewrote subsection (4) and deleted subsection (5). Because the facts of the case occurred before the amendment took effect, this case is governed by the pre-amended version.