In re **GROVE PEACOCK PLAZA, LTD.,** Florida Limited Partnership, Debtor.

**GROVE PEACOCK PLAZA, LTD.,** Plaintiff,

v.

**RESOLUTION TRUST CORPORATION** as Conservator for Investors Federal Savings Bank, First Florida Mortgage Corporation, Defendant.

Bankruptcy No. 90–18645–BKC–RAM. Adv. No. 91–0088–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

April 2, 1992.

Amended Judgment April 16, 1992.

provisions of § 1334 "obviate the need for an overly restrictive interpretation of the jurisdictional grant of § 1334(b)").

Irving M. Wolff, Miami, Fla., for debtor, plaintiff.

Gregg W. McClosky, Boca Raton, Fla., for defendant.

## MEMORANDUM OPINION

MARY D. SCOTT, Visiting Bankruptcy Judge.

THIS CAUSE came on for trial on November 21, 1991, Irving M. Wolff, Esq., appearing for the debtor plaintiff, and Gregg McClosky, appearing for the defendant Resolution Trust Corporation. The parties made oral statements and submitted the cause to the Court on stipulated exhibits. The matter before the Court is outlined in those issues stated in the "revised amendment" to the complaint, specifically a count to recover funds transferred, under Sections 547 and 550 of the Bankruptcy Code (11 U.S.C.).

The complaint was filed on February 11, 1991, stating three counts, to which an answer was filed on March 14, 1991. On April 2, the plaintiff filed a motion for leave to file an amended complaint. On April 4, 1991, a hearing was held with regard to the motion to amend. In addition, the Court considered the issue as to whether abstention would be appropriate as to the issues raised in the adversary

proceeding. The Court heard extensive argument of the parties after which the Court made several rulings. The Court abstained with respect to Counts I, II, and III. Thus, only the proposed "amendment" remained as a proposed pleading.

The Court granted in part and denied in part the motion to amend. The Court denied the request to amend insofar as the amendment attempted to plead recovery of payments made more than one year prior to the bankruptcy. The Court denied the motion to amend with respect to payments drawn from an interest reserve and also denied the motion with respect to a post-petition payment arising from the encashment of a letter of credit. On April 10, 1991, the plaintiff filed a revised amendment to the complaint. Thereafter, the RTC filed a "response" to the "amendment."

The amendment to Count IV, which was to reflect the Court's directives of April 4, 1991, in fact attempts to raise issues concluded during the April 4, 1991, hearing and ruling. The issues were framed at the hearing on April 4, 1991, and this Court will not now consider arguments by plaintiff which attempt to circumvent or ignore that order. Specifically, plaintiff raises arguments regarding the letter of credit and the draws on the interest reserve. These arguments are inappropriate in light of the Court's previous rulings.

On October 30, 1991, the debtor filed a Motion to determine the amount, validity and priority of lien. That matter, filed in the main bankruptcy case, was consolidated for trial purposes with the above-numbered adversary proceeding.

On November 21, 1991, the matter was called and the parties announced ready for trial. The parties submitted this matter on stipulated documents. The parties were also granted time in which to file additional motions and argument with the Court, after which this cause was under submission and ripe for ruling. After the submission of the evidence, plaintiffs once again moved to amend the complaint. The issues raised in the amendment are issues addressed and ruled upon at the hearing on April 4, 1991, and stated in a written order of June 21, 1991. These issues, previously raised, argued and ruled upon, will not be considered in this opinion.

The orders and hearings in this case have defined the issues as follows:

1. To what extent is the defendant secured?

2. Whether the payment of $200,000 on February 1990, is a preference, Bankruptcy Code section 547(b) (11 U.S.C.), and whether any exceptions apply under section 547(c).

3. Whether the payment of $103,000 on September 13, 1990, is a preference, Bankruptcy Code section 547(b), and whether any exceptions apply under section 547(c).

4. Whether the good faith exception under section 550(b) is applicable in this case such that any preference is excepted from recovery.

## I.

## SUMMARY OF FACTS

Grove Peacock Plaza, Ltd. ("Grove Peacock") is a Florida limited partnership whose general partner is KMK International, a Florida corporation, whose sole stockholder, director and officer is Klaus Moser.

On March 22, 1988, First Florida Mortgage Corporation ("First Florida") arranged construction financing for Grove Peacock through Investors Federal Savings and Loan Association ("Investors"). The short term construction loan was in the amount of up to $4,500,000 with a term of 18 months, renewal for an additional six months provided a $22,500 fee was paid. The construction loan could be converted into a permanent loan provided several conditions precedent were satisfied and provided the loan was not in default. As additional security, guarantees were executed by Klaus Moser and Aysen Moser, and a $250,000 standby letter of credit was pledged.

In February 1990, someone, not the debtor, forwarded to Investors the sum of $200,000 in partial payment on the loan. On July 1, 1990, the loan matured and was

not satisfied. In August 1990, the loan was declared to be in default. Finally, the pleadings allege that on September 13, 1990, a total of $103,700 was sent to the RTC as a payment on the loan.[1] This transfer consisted of three separate payments:

| | |
|---|---|
| Wire transfer: | $ 7,700.00 |
| Wire transfer: | 69,306.82 |
| Check from Grove Peacock: | 26,000.00 |
| TOTAL: | $103,006.82 |

In fact, only $103,006.82[2] was transmitted to the bank. The majority of the transfer of funds sought to be avoided was not a transfer of the debtor's property. Of the total funds transmitted, the proof indicates that only $26,000 were funds of the debtor.

Grove Peacock Plaza, Ltd. filed its voluntary Chapter 11 Petition in Bankruptcy on November 20, 1990. The principal amount of the debt owed to Investors at the time of the filing of the bankruptcy petition was Four Million, Three Hundred Ninety–One Thousand, Four Hundred Sixty–Seven and 28/100 Dollars ($4,391,467.28). The letter of credit was additional collateral for the loan, but is was not property of the debtor. The RTC, a secured and unsecured creditor in this bankruptcy, is the owner and holder of a valid security interest in the subject real property by virtue of the mortgage. The secured claim held by the RTC is in the amount of $4,200,000.

## II.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2) as exemplified by 28 U.S.C. § 157(b)(2)(F).

### A. *The Burdens of Proof*

■ The burdens of proof in this action are particularly important inasmuch as the parties have provided little evidence and no testimony to assist the Court in its determination. The plaintiff bears the burden of proving the elements of avoidability under section 547(b). *Nordberg v. Arab Banking Corporation (In re Chase & Sanborn Corporation)*, 904 F.2d 588, 595 n. 15 (11th Cir.1990); *Friedman v. Grossman (In re Trauger)*, 105 B.R. 120, 122 (Bankr. S.D.Fla.1989). Each of these elements must be proven by a preponderance of the evidence. *Pembroke Development Corporation v. Commonwealth Savings & Loan Association (In re Pembroke Development Corporation)*, 124 B.R. 398, 401 (Bankr. S.D.Fla.1991). However, the creditor or transferee bears the burden of providing affirmative defenses it raises pursuant to section 547(c). *Nordberg*, 904 F.2d at 595 n. 15; *Trauger*, 105 B.R. at 122.

■ Section 547(f) which provides for a presumption of insolvency places the burden upon the creditor to provide evidence to overcome the presumption. *See Trauger*, 105 B.R. at 122. While it is true that under the Bankruptcy Code the debtor is presumed to have been insolvent for the ninety days preceding bankruptcy, 11 U.S.C. § 547(f), once the creditor has provided some evidence of solvency, the burden shifts to the plaintiff. *Clay v. Traders Bank of Kansas City*, 708 F.2d 1347, 1351 (8th Cir.1983). For the period between one year and ninety days before bankruptcy, the debtor plaintiff has the burden of demonstrating insolvency.

These burdens are particularly important in this case because of the manner in which this matter has been submitted to the

---

1. On June 1, 1990, the Resolution Trust Corporation ("RTC") was appointed receiver for Investors. This was effected by order No. 90–1023 issued by the Office of Thrift Supervision, pursuant to Section 5(d)(2) of the Homeowners Loan Act of 1933 as amended by Section 301 of Financial Institution Reform Recovery and Enforcement Act of 1989.

2. There is not only a disparity between the pleadings and supporting documents, the supporting documents contain errors rendering the amount of the transfer uncertain. Internal memoranda of Investors states a sum of $103,-096.82 for the September 30, 1990, payment. The actual sum of the three payments, however, is $103,006.82. One of the figures is obviously a typographical error. However, the parties have failed to provide any information as to which figure is incorrect. As a result, the party with the burden of proof, the debtor, fails in a measure of its proof.

Court. On November 21, 1991, the parties announced ready for trial, submitted documentary evidence, and made oral arguments. Thereafter, each party rested. No testimony was offered to the Court; the parties submitted the case to the Court on the documentary evidence and one written stipulation as to the amount of the debt.[3]

■ It is axiomatic that parties are bound by their stipulations. *O'Connor v. City & County of Denver*, 894 F.2d 1210, 1225 (10th Cir.1990); *Morelock v. NCR Corporation*, 586 F.2d 1096, 1107 (6th Cir. 1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). Where parties submit matters on the written record, the parties have authorized the judge to decide the issues of material fact that exist, whether or not argued or even anticipated by the parties. *Boston Five Cents Savings Bank v. Department of Housing and Urban Development*, 768 F.2d 5, 11–12 (1st Cir.1985). This situation is distinguishable from the situation in which the parties submit the matter on cross-motions for summary judgment. If cross-motions for summary judgment are filed, an issue of fact will require that the Court set the matter for trial in order to hear additional evidence. *Id.* In the case at bar, the parties have authorized the Court to decide the facts on the evidence they have submitted.

■ Parties are also bound by the burdens and the proof they submit. *See Great Northern Nekoosa Corporation v. United States*, 711 F.2d 473 (1st Cir.1983). The failure of a party to meet its burden of proof, results in judgment against that party. *See id.* In the instant case, the Court has before it the stipulated documents, the agreement of the parties that they are bound by the submissions, and the statements that they have no additional proof to offer in support of their respective cases. It is a precept basic to our judicial system that statements of counsel, not in stipulated form, are not evidence. In determining the facts, this Court looks not to the arguments of counsel, but the evidence submitted.

### B. *The RTC Security Interest*

The first issue for the Court is the extent to which the RTC is secured by property of the debtor. *See* 11 U.S.C. § 506. The collateral by which the RTC is secured consists of the developed real property. The parties dispute the value of the real property and have submitted real estate appraisals in support of their contentions. The following evidence is before the Court regarding the value of the real property: (1) the real estate appraisal submitted by Grove Peacock Plaza in which the property is valued at $3,250,000; (2) the real estate appraisal of Harmon Garrin Associates Inc. submitted by the RTC in which the property is valued at $4,200,000; (3) the real estate appraisal of Prestige Appraisal Service, Inc. submitted by the RTC in which the property is valued at $4,200,000; and (4) the Combined Tax Bill of a local government unit in which the property is valued at $3,233,619. No party offered testimony of the appraisers or other experts; no cross-examination was conducted.

■ The Court has reviewed the appraisals and finds the appraisals submitted by the RTC to be more credible. The issue before the Court is the value of the property as of the date of the filing of the petition in bankruptcy. The RTC's appraisals determine the value at or near that time: October 1, 1990, and August 30, 1990. In contrast, the debtor's appraisal determines the value as of a date nearly one year past the filing of the chapter 11 petition. Accordingly, the RTC appraisals are more probative of the value of the property.

The appraisals submitted by the RTC are also superior in that the economic analysis with respect to the particular locale of the property is stronger. The appraisal of plaintiff, in contrast, is more general and contains less analysis of the local and very specialized market conditions of Coconut Grove. The appraisers concur that the eco-

---

**3.** The Court finds that many of the exhibits submitted to the Court, without explanation or supporting testimony, are unhelpful. Indeed, some of the exhibits can hardly be credited as evidence given the insufficient information before the Court.

nomic conditions of Coconut Grove are unhealthy. The appraisal of the plaintiff relies heavily upon the fact that there were discrepancies between the leases and the actual collection of rent. This is indeed a factor in determining the value of the property, and is included in the analysis of one of the RTC's appraisals. However, the Court finds that the plaintiff's appraisal places undue emphasis upon this factor in determining the value of the property. Accordingly, the Court finds that the value of the subject real property is $4,200,000. RTC has a perfected security interest in that amount.[4]

### C. *The Preference Action*

Plaintiff has pleaded actions under 11 U.S.C. § 547, 549, 550, and 552. Sections 549, 552 are inapplicable to this matter by virtue of the Court's previous orders limiting the issues to the transfers made within one year prior to the filing of the petition in bankruptcy. By virtue of prior orders in this case, plaintiff is limited to seeking a determination that two payments by the guarantor of the debtor were preferential transfers within the meaning of 11 U.S.C. § 547.

The RTC asserts three lines of defense: (1) that the payments are not preferences under section 547(b); (2) that the transfers are excepted from avoidance because the payments were made in the ordinary course under section 547(c); and (3) any preference cannot be recovered inasmuch as the RTC is a good faith subsequent transferee under section 550(b). There are two payments properly in issue: (1) a wire transfer made in February 1990 in the amount of $200,000 and (2) a combination of wire transfers and a check, totaling $103,006.82, made on September 13, 1990.

#### 1. Section 547(b): The Debtor's Cause of Action

The point of analysis for any statutory action is the statute itself. Bankruptcy Code section 547 provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to and for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within ninety days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

\*    \*    \*    \*    \*    \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.    \*  \*  \*

11 U.S.C. § 547(b), (c). There appears to be no dispute regarding paragraph 547(b)(1), the payment was made to or for

---

**4.** The RTC pleaded that it has a perfected security interest in the rents and profits of Peacock Grove. However, the Court has insufficient evidence before it to determine what those amounts may be. The value of the RTC's security interest is only that amount it proved.

The RTC is also secured by the $250,000 letter of credit. However, the letter of credit is not property of the debtor such that it is not included for purposes of determining the extent to which the RTC is secured.

the benefit of a creditor, or paragraphs 547(b)(2), payment on account of an antecedent debt. The remainder of the elements of the statute and defenses are disputed.

### (a) Transfer of an Interest in Property of the Debtor

Section 547 requires that the transfer be a "transfer of an interest of the debtor in property." *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351 (5th Cir.), *reh'g denied en bank*, 801 F.2d 398 (5th Cir.1986). While the Bankruptcy Code does not define "property of the debtor," the Supreme Court has indicated that "'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). The debtor has no interest in property that it holds in trust for another, or in which it has no legal or equitable interest. *Id.* This maxim holds true for payments that are made by a third party to reduce a debt. No transfer of property of the debtor occurs when a third party pays the creditor directly. *Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.)*, 100 B.R. 127, 133 (Bankr.D.Mass. 1989). "It is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished." *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1355–56 (5th Cir. 1986).

The debtor has failed to prove that the majority of the funds transferred were the debtor's property. The RTC asserts, and the debtor does not appear to dispute, that the funds were funds belonging to a limited partner of the debtor. The evidence, however, is lacking. The only evidence in the record regarding the first payment at issue is that Investors received $200,000 in early 1990. This is found in the deposition of Ann Hendon during which Hendon indicated that a "contribution" was made in the "early part of 1990" by "wire from Germany." Hendon deposition at 45. Later in the deposition, Hendon is asked about a $200,000 wire from France made in the early part of 1990. It appears from the arguments of counsel and the record that only one $200,000 payment was made in early 1990. The Court finds that the $200,000 was a wire from Europe and is the $200,000 payment in dispute by the parties. The Court further finds that this payment was not made by the debtor. At a minimum, the debtor has failed to meet its burden that the payment is a "transfer of an interest of the debtor in property" with respect to the $200,000 payment made in February 1990.[5]

The evidence regarding the $103,700 alleged to have been paid to RTC on September 13, 1990, is only marginally clearer. Hendon testified that, "Part of the funds came in by check, the other part came in from Mr. Friedman's[6] trust account through wire." Hendon deposition at 80. The internal memoranda of the bank indicate that a total of $77,006.82 was received by wire. The Court finds that the wire transfers were not payments by the debtor. At a minimum, the debtor has again failed to meet its burden that $77,006.82 of the payment is a "transfer of an interest of the debtor in property" with respect to the

---

**5.** The Court notes the presence of Exhibit II which purports to be a promissory note supporting one of the "loans" referenced in Exhibit HH. It is a rather flimsy document to support a loan for nearly $200,000. Further, it is dated one day after the filing of the petition in bankruptcy, rendering its validity, without court approval, questionable. The veracity of the document is also questionable inasmuch as it was purportedly signed on a date well after the funds were purportedly transmitted. While no explanation exists in the arguments of counsel for the document, the Court surmises that it is provided as proof that the $200,000 was a payment by the debtor. If this is the case, the Court finds that document is a sham created to support the argument that "property of the debtor" was transferred.

**6.** Mr. Friedman is apparently an attorney. There is a letter attached to the deposition from a Nicholas Friedman who represented Grove Peacock in some capacity.

$103,700 payment made on September 13, 1990.

The debtor has demonstrated that $26,000 of the payment made on September 13, 1990, was property of the debtor. In the record, is a copy of a check from Grove Peacock Plaza, Ltd., dated September 13, 1990, made payable to Investors. The memo line references "interest." Accordingly, the court finds that $26,000 of the September 13, 1990, payment constituted property of the debtor.

There is yet another variance between the allegations of the parties and the proof submitted. The debtor asserts that the payment made on September 13, 1990, was $103,700; the RTC's answer admits that $103,000 was paid. Investor's internal memoranda, the only evidence before the Court, indicate that $103,006.82 was received by the bank. Accordingly, the debtor also fails in its proof as to $693.18 of the September 1990 payment.

■ The debtor does not directly assert that the funds constitute "property of the debtor." Instead, the debtor argues that the payments by the guarantor/insider created a claim by the guarantor against the debtor such that the estate was burdened by the transfer. The facts do not support this interpretation. The fact that a non-debtor transferor may later make a claim against the debtor does not create in the debtor a property interest in those funds. Since the funds were not property of the debtor, section 547 is inapplicable. *See*

*Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351 (5th Cir.1986).

Further, while the guarantor may have a claim against the debtor for the funds it paid, the result is merely to change the identity of the creditor, not diminish the estate. *See Kupetz v. United States (In re California Trade Technical Schools, Inc.)*, 923 F.2d 641, 646 (9th Cir.1991); *Boyer v. Baker & Schultz, Inc. (In re Smith)*, 123 B.R. 605, 610 (N.D.Ind.1991) (" '[W]here the only change is in the identity of the creditor, without a corresponding depletion of the bankruptcy estate, one policy underlying the power to avoid a preference has not been offended by the transfer.' ... Thus, payments made by an indorser, surety or guarantor do not effect a preference because there is no transfer of an interest of the debtor in property."). There is no diminution, directly or indirectly, of the fund to which creditors of the same class can resort for payment of their debts. Indeed, in this situation, the RTC is the only creditor of its class: it is the only secured creditor. Further, the potential claim of the insider guarantor[7] would be the last to be paid so that no outside creditors would suffer from the existence of the claim of the guarantor. *See Boyer v. Baker & Schultz, Inc. (In re Smith)*, 123 B.R. 605, 610 (N.D.Ind.1991).

In summary, the Court finds that the payment of $200,000 made to the RTC in February 1990 was not property of the debtor. The findings regarding the September 13, 1990, payment can be summarized as follows:

| | | |
|---|---|---|
| Wire transfer: | $ 7,700.00 | (not property of the debtor) |
| Wire transfer: | 69,306.82 | (not property of the debtor) |
| Funds not transmitted: | 693.18 | (not property of the debtor) |
| Check from Grove Peacock: | 26,000.00 | (property of the debtor) |

Thus, of the $103,000 paid on September 13, 1990, only $26,000 was property of the debtor.

(b) *Insolvency of the Debtor, 11 U.S.C. § 547(b)(3)*

While the debtor generally bears the burden of proof with respect to the elements

---

7. The Court assumes, for the sake of disposing of debtor's argument, that the payment was made by an insider and/or guarantor.

listed in section 547(b), the debtor is assisted by the presumption of insolvency found in 547(f). *See Trauger*, 105 B.R. at 122. Of course, the presumption applies only to the ninety days prior to the filing of the petition in bankruptcy. 11 U.S.C. § 547(f). Accordingly, the creditor RTC bears the initial burden of demonstrating solvency with regard to the payment made on September 13, 1990, while the debtor bears the burden of proving that the debtor was insolvent when payment in February 1990, was made. *See Pembroke Development Corporation v. Commonwealth Savings & Loan Association (In re Pembroke Development Corporation)*, 124 B.R. 398, 401 (Bankr.S.D.Fla.1991). The proof on behalf of both parties is lacking.

■ A debtor is insolvent for preferential purposes when the fair value of its liabilities exceeds the fair value of its assets. *Pembroke Development Corporation*, 124 B.R. at 401. "The fair value of the debtor's assets is determined by estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions." *Id.* This Court has determined that the fair market value of the subject property is $4,200,000. The only other evidence regarding the debtor's financial condition is contained in the schedules. From a review of the schedules it is clear that the liabilities exceeded the assets on the date of the petition in bankruptcy. Thus, the presumption in favor of insolvency for the ninety day period prior to bankruptcy has not been rebutted. However, the debtor has failed to demonstrate that it was insolvent during the period prior in time to the ninety day preference period. Accordingly, the debtor meets its burden on insolvency as to the September 13, 1990, payment, but fails with respect to the February 1990 payment.

(c) *The Preference Period, 11 U.S.C. § 547(b)(4)*

The debtor argues that the one year preference period stated in section 547(b)(4)(B) applies in this case. Section 547(b)(4) requires that the payment be made either

on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider.

The debtor begins with a very general, supportable legal premise: If a payment favors an insider guarantor, the transfer may be a preference, citing *Levit v. Ingersoll Rand Financial Corporation*, 874 F.2d 1186 (7th Cir.1989) (In re V.N. Deprizio Construction Co.). In *Levit*, the Seventh Circuit discussed the situation in which the debtor makes a pre-petition payment to a creditor which has the effect of protecting or reducing the liability of an insider guarantor. Further, since the payment was for the benefit of a guarantor, the *Levit* court held that the preference-recovery period was one-year, pursuant to 11 U.S.C. § 547(b)(4)(B), rather than the ninety day period stated in section 547(b)(4)(A).

■ The debtor's assertion that an insider was "involved"[8] does not compel the conclusion that an insider was "benefited" for the purposes of analysis under *Levit*. The analysis in *Levit*, cannot be extended to the facts in this case. In order to extend the preference period to one year, section 547(b)(4)(B) requires that the transfer be made to a creditor who is an insider. 11 U.S.C. § 547(b)(4)(B) ("if such creditor at the time of such transfer was an insider."). In the instant case, the transfer was not made to an insider. While the statute may support a recovery from the insider who obtained the benefit, section 547(b) does not provide for an extension of the preference period when the payment was made to a non-insider.

Further, section 550 of the Bankruptcy Code does not operate to expand the pref-

---

**8.** The Court assumes without deciding that an insider was "involved." The evidence before the Court is that the February 1990 payment was wired from Europe. There is insufficient evidence to even determine that the wire was from an insider.

erence period. Section 550(a) provides as follows:

> (a) Except as otherwise provided in this section, *to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title,* the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made. * * *

11 U.S.C. § 550(a) (emphasis added). Section 550 which specifically references and is limited by section 547 must be read in *pari materia* with section 547. *Block v. Texas Commerce Bank National Association (Midwestern Companies, Inc.),* 102 B.R. 169, 172–73 (W.D.Mo.1989) The clear, unambiguous language of section 547 provides for avoiding transfers occurring greater than ninety days before bankruptcy only if the transferee was an insider. The Court in *Midwestern Companies, Inc.,* 102 B.R. 169 summarizes cogently another defect in the debtor's argument:

> Section 547 distinguishes between insiders and non-insiders by specifying different time limits, and Section 550 permits recovery of avoidances as identified by Section 547. If the statutes were to be construed as the trustee here urges, the distinction drawn in Section 547 would be obliterated by Section 500. That is, there would be no need to distinguish between insiders and non-insiders for purposes of determining avoidability if recovery from insiders and non-insiders alike would occur anyway.

*Id.* at 173. Of course, reading section 547 in *pari materia* with section 550 does not obliterate the one year preference period for insiders. When transfers benefit the insider contingent creditor, the preference period is expanded as to the insider:

Consequently, a payment which occurred more than 90 days prior to bankruptcy will not be recoverable from a non-insider, even where it is payment on a debt guaranteed by an insider. However, also consistent with the statutes, such payment will be recoverable from the insider/guarantor if it is made within a year prior to bankruptcy.

*Id.; see also In re Cove Patio Corp.,* 19 B.R. 843 (Bankr.S.D.Fla.1982) ("Section 550(a)(1) was not intended to expand the Trustee's right to recover preferences as provided in § 547.").

The doctrine in *Levit* is inapplicable to the facts of this case for an even more compelling factual reason. *Levit* applies to the situation in which the *debtor* makes a payment, *i.e.,* where there is a diminution in the estate. In *Levit,* the basis of the trustee's argument was that the payment to a creditor provided a benefit to the insider, to the detriment of the debtor and other creditors. In the instant case, the debtor argues in effect that a payment by an insider guarantor benefited the insider guarantor. By no logic does the payment by the insider guarantor favor an insider. Indeed, in this situation, it is the guarantor who is harmed, while the debtor and other general unsecured creditors are benefited. The debtor had the benefit of the reduction of its debt. The unsecured creditors obtain the benefit of an overall greater distribution, with the insider's claim subordinated to their claims.

Accordingly, there is no basis for extending the preference period to one year pursuant to section 547(b)(4). Thus, the debtor fails in its proof as to the February 1990 payment because it is not within the ninety day preference period. Even were the *Levit* doctrine the law in this circuit, there is no evidence of benefit to an insider such that the preference period could be extended. Only the payment made on September 13, 1990, meets the requirement set forth in section 547(b)(4).[9]

---

**9.** The debtor also argues in its briefs that it should be permitted to recover all of the monthly interest payments made for the year prior to the filing of the chapter 11 petition in bankruptcy. The Court ruled in open Court in April 1991, and by written order signed in June 1991, that these payments would not be considered. The arguments now set forth regarding these monthly interest payments are improper and will not be considered. In any event, these payments clearly are within the ordinary course exception of section 547(c).

(d) *Comparison with Liquidation, 11 U.S.C. § 547(b)(5)*

Finally, section 547 requires that the defendant receive more than it would in a chapter 7 liquidation in order for a payment to be considered a preference. 11 U.S.C. § 547(b)(5). The Court looks to a hypothetical liquidation as of the date of the petition in bankruptcy. *Clark v. A.B. Hirschfeld Press, Inc. (In re Buyer's Club Markets, Inc.)*, 123 B.R. 895, 897 (Bankr. D.Colo.1991). As a general rule, the question is whether other creditors holding unsecured claims are prejudiced. *Smith v. Associates Commercial Corporation (In re Clark Pipe and Supply Co., Inc.)*, 893 F.2d 693, 696 (5th Cir.1990). The plaintiff need not quantify the amount of prejudicial effect with absolute certainty. *Craig v. Minden Exchange Bank & Trust Co. (In re Craig)*, 92 B.R. 394 (Bankr.D.Neb.1988). Whether prejudice exists is determined by whether the general unsecured claimants will receive less than 100 percent recovery of their claims. *Kellman v. P.S.E. & G (In re Jolly "N", Inc.)*, 122 B.R. 897, 904 (Bankr.D.N.J.1991). The evidence contained in the schedules, if uncontested and unsupplemented, may contain sufficient evidence to carry the burden of this element. *See Hill v. Southeast Bank, N.A. (In re Continental Country Club, Inc.)*, 108 B.R. 327, 332 (Bankr.M.D.Fla.1989). As a general rule, this element can be satisfied if the transferee creditor has an unsecured claim and receives payment within the ninety day preference period, unless the assets are sufficient to provide a 100 percent distribution to the other creditors. *In re Continental Country Club, Inc.*, 108 B.R. at 332.

According to these precepts, the Court must first determine in what class of creditors the transferee falls. The amount by which the RTC is secured by property of the debtor is $4,200,000. The parties have stipulated that the debt, on the date of filing of the petition in bankruptcy is $4,391,467.28. Accordingly, the RTC holds, in part, an unsecured claim. Were the RTC fully secured, this element would not be in issue; however, inasmuch as the RTC is partially unsecured, the Court must determine whether other unsecured creditors are prejudiced. A review of the debtor's schedules indicate that it is extremely unlikely, if not impossible, for the unsecured creditors to receive 100 percent of their claim. Thus, to the extent that it received funds in application of its unsecured claim, the RTC has received more than it would were this a case under chapter 7. *See Union Bank v. Wolas*, — U.S. —, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) ("When a debtor is insolvent, a transfer to one creditor necessarily impairs the claims of the debtor's other unsecured and undersecured creditors."). Accordingly, the debtor has carried its burden under section 547(b)(5).

2. Section 547(c): The RTC Defense

If a payment is a preference under section 547(b), it may be excepted from avoidance by section 547(c). *Union Bank v. Wolas*, 112 S.Ct. 527 (1991); [10] *see generally Gosh v. Burns (In re Finn)*, 909 F.2d 903, 906–07 (6th Cir.1990). The RTC argues that no preferential transfer occurred because the payments sought to be avoided were transfers in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee and in accord with ordinary business terms.

Ordinary course within the meaning of section 547(c) is determined by application of an objective test, *Bell Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.)*, 107 B.R. 707, 709 (BAP 9th Cir.1989), under which the Court looks to the course of dealing between the parties and the common practice in the industry, *Van Huffel Tube Corporation v. A & G Industries (In re Van Huffel Tube Corporation)*, 74 B.R. 579, 588 (Bankr.N.D.Ohio 1987). There are several factors courts

---

**10.** Plaintiff asserts that *Wolas* is inapplicable to the case and that the defendant failed to plead section 547(c). Plaintiff is in error. Section 547(c)(2) is specifically pleaded in paragraph 5 of the response to the amendment filed by the defendant. *Wolas* is not only applicable, it is controlling.

consider in determining whether a payment is made in the ordinary course within the meaning of section 547. These include the timing of the payment, the amount of the payment, the manner of the payment, and the circumstances under which the payment was made. *Yurika Foods Corporation v. United Parcel Service (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir. 1989); *Jensen v. Raymond Building Supply Corporation (In re Homes of Port Charlotte Florida, Inc.)* 109 B.R. 489, 491 (Bankr.M.D.Fla.1990). The burden of proof of this test is upon the transferee, RTC. *Van Huffel,* 74 B.R. at 588. The three elements of section 547(c)(2) are straightforward.

### (a) *Debt Incurred in the Ordinary Course of Financial Affairs*

■ The transfer must be in payment of a debt incurred in the ordinary course of financial affairs of the debtor and the transferee. 11 U.S.C. § 547(c)(2)(A). This subparagraph focuses upon the nature of the original transaction creating the debt. In the instant case, this subparagraph is clearly met. The business of Investors was the lending of monies for construction and development of real property. Grove Peacock was formed to develop the subject property. Further, a transaction may constitute a transaction in the ordinary course of financial affairs even if it is the first or only such transaction undertaken by the debtor. *See Finn,* 909 F.2d at 902 ("[T]he incurring of long-term consumer debt that is a 'normal financial relation' and that is not unusual action undertaken during the 'slide into bankruptcy' will satisfy § 547(c)(2)(A)'s requirement for an exception from the avoidance rules.").

### (b) *Payment Made in the Ordinary Course*

■ The transfer or payment must be made in the ordinary course of business or financial affairs of both the debtor and the transferee. 11 U.S.C. § 547(c)(2)(B). The payments must be analyzed separately.

The $200,000 payment made in February 1990 was not made in the ordinary course of the financial affairs of the debtor because it was not made by the debtor.[11] There is no evidence in the record that the guarantors, investors, or any other third parties ordinarily or routinely made payments to Investors on behalf of Grove Peacock. Accordingly, the $200,000 payment was not made in the ordinary course. The majority of the payment made on September 13, 1990, fails for the same reason: there is no evidence that it was the ordinary course for large sums to be wired by persons other than the debtor. In addition, the amount is not in the range of interest payments the debtor made on a monthly basis.

■ The $26,000 paid by Grove Peacock, however, is a separate issue. While the amount $26,000 is generally within the range of amounts paid for interest on a monthly basis, there is insufficient information in the record to find that RTC has carried its burden as to this element. Indeed, there is very little information from this record by which the Court could make the fact-intensive finding that the RTC met its burden. The meager information before the Court—the amount of the payment and the circumstances under which the payment was made do not indicate that this payment was made in the ordinary course of business affairs of the debtor. The check itself indicates that it was in payment of "interest." However, the record is devoid of information as to whether the debtor was making regular payments near September 1990. Indeed, the information in the record is that the interest payments ceased in the Summer of 1990. That loan had already matured and the debtor's "slide into bankruptcy" was accelerating, indicate the payment was not made in the ordinary course.

### (c) *Transfer Made According to Ordinary Terms*

The transfer must be made according to ordinary business terms. 11 U.S.C.

---

11. This defense under section 547(c) fails for the same reason the debtor's case fails under section 547(b). The payments (with the exception of $26,000) are not property of the debtor. The defense highlights the defect in plaintiff's case: the section is simply inapplicable to transfers of funds in which the debtor does not have a property interest.

§ 547(c)(2)(A). Again, the only payment, or portion thereof, for which this analysis is relevant is the $26,000 check dated September 13, 1991. There is nothing in the record to indicate that the transfer was made according to ordinary business terms. While a payment regularly made in accord with the business terms set forth in the agreement of the parties would appear to fall within this subparagraph, the record does not indicate that the $26,000 payment, made after maturation, was so made. The RTC has not carried its burden with respect to this element.

### 3. The Debtor's Argument

The debtor does not directly confront the elements of the statute. The debtor appears to argue that the manner in which the payments were applied by the bank constitutes a preference. The debtor argues that (1) the bank received funds; (2) the bank was undersecured at the time it received the funds; and, therefore, (3) the payments must be applied to the principal balance rather than to interest accruals. Logic does not support the debtor's argument: its conclusion does not follow from its premises.

■■■ First, the debtor has no standing to argue whether payments should be applied to principal or interest where a third-party made those payments. In any event, the debtor has submitted no evidence as to how the payments were in fact applied to the debt. Second, with regard to the $26,000 payment made on September 13, 1990, the argument is irrelevant because that payment is itself a preference. There is no need to order reapplication of funds that are required to be turned over to the debtor-in-possession. Third, the statute requires that the debtor prove several elements: it does not follow that because the debtor proves one or two of the elements, the requirements of the statute are met. *All* of the elements must be met in order for a preference to exist under section 547(b).

Finally, although its arguments are unclear, the debtor appears to rely heavily upon language found in *CHG Internation-*al, *Inc. v. Barclays Bank (In re CHG International Inc.)*, 897 F.2d 1479 (9th Cir. 1990). This case has no validity after the ruling in *Union Bank v. Wolas*, 112 S.Ct. 527 (1991), wherein the Supreme Court held that the ordinary business exception set forth in 11 U.S.C. § 547(c) applies to long-term debt.

### D. *Good Faith Transferee for Value*

#### 1. The Good Faith Exception, § 550(b)

The RTC's proposed conclusions of law references 11 U.S.C. § 550(b), stating simply:

"11 U.S.C. § 550(b) does apply to the current case." The defense provided in section 550(b) was not pleaded by the RTC and appears nowhere in the file. Thus, it does not appear that this matter is properly before the Court. While the RTC asserts that section 550(b) precludes recovery of any funds found to be a preference, it does not direct the Court to the evidence which would support its assertion. Even were the matter sufficiently pleaded, litigated, or presented to the Court, it does not appear that section 550(b)(1) precludes plaintiff's recovery of the $26,000 preference.

■■■ Section 550(b) states:

(b) The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

Section 550, thus, limits a trustee's right to recover transfers. The burden is upon the debtor to demonstrate that the section is not available as a defense. *See Federal Deposit Insurance Corporation v. Fidelity Electronics, Ltd., Inc. (In re Fidelity Electronics Ltd., Inc.)*, 52 B.R. 475, 478 (Bankr.S.D.Fla.1985) (requiring a showing of bad faith to defeat the defense); *Holt v. Federal Deposit Insurance Corporation (In re Instrument Sales & Service, Inc.)*, 99 B.R. 742, 745–46 (Bankr.W.D.Tex.1987) (FDIC as receiver presumed to be a good faith purchaser for value). Thus, it is gen-

erally the plaintiff's duty to demonstrate that the subsequent transferee took for value, in good faith and without knowledge of the voidability of the transfer avoided. *Gallant v. Kanterman (In re Kanterman),* 97 B.R. 768, 778 (Bankr.S.D.N.Y.), *aff'd,* 108 B.R. 432 (S.D.N.Y.1989). The section is inapplicable to the February 1990 transfer inasmuch as that payment was not an avoidable preference. The Court has determined that only $26,000 of the September 13, 1990, payment is a preference.

■ The first issue is whether the RTC is a subsequent transferee such that paragraph 550(b)(1) is applicable. In order for paragraph 550(b)(1) to apply, the RTC must be an immediate or mediate transferee of the initial transferee. 11 U.S.C. § 550(a)(2), (b). If the RTC is the initial transferee, the defense in section 550(b) is inapplicable. The issue is problematic inasmuch as the RTC was already in place as receiver of Investors at the time the transfer was made. With regard to the note itself and the February 1990 payment, the RTC is a subsequent transferee. The question, however, in this case, is whether the RTC can be a subsequent transferee with respect to a payment received while acting as a receiver. Under the facts of this case, the Court finds that it is not.

■ Even were the RTC a subsequent transferee, another hurdle exists. Section 550(b)(1) requires that the transferee take "without knowledge of the voidability of the transfer avoided." The requirement that the transferee take "without knowledge" is not merely the equivalent of good faith. Good faith is stated as a separate requirement to the statute. This Court will utilize the position quoted in *Collier's*: the without knowledge requirement means that " 'if the transferee knew facts that would lead a reasonable person to believe that the property [transferred] was recoverable.' With respect to prepetition transfers that are recoverable only if a petition seeking relief under the Bankruptcy Code is filed, the transferee should be held to have knowledge of the voidability of the transfer if, *inter alia,* he has reasonable cause to believe that a petition may be filed." 4

*Collier on Bankruptcy* ¶ 550.03 at 550–10 (15th ed. 1992).

In the instant case, the payment was received just two months prior to the filing of the petition in bankruptcy; the debtor was in default and negotiating with the RTC regarding repayment of the loan. The RTC was thus fully aware of the debtor's financial condition and the potential for a bankruptcy petition. Accordingly, this Court finds that under these particular facts, section 550(b) will not preclude recovery of the $26,000 preference. *See generally Federal Deposit Insurance Corporation v. Wright (In re Still),* 124 B.R. 24, 28–29 (N.D.Tex.1991).

2. The Statute of Limitations, § 550(e)

■ Section 550(e) provides for a statute of limitations as to recovery of avoided transfers:

(e) An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or

(2) the time the case is closed or dismissed.

The RTC argues that the statute of limitations on the action has expired as to the February 1990 payment inasmuch as the action was commenced more than one year after the transfer was made. The limitation in section 550(e), however, does not run from the date a transfer is made, but from the date a transfer is avoided. In the instant case, the debtor has filed the avoidance action under section 547 with the recovery action under section 550. Since the transfer has not yet been avoided, the statute has not begun to run on recovery.

III.

CONCLUSION

The payment made in February 1990 is clearly not a preference. The debtor can carry only three elements of its burden with respect to this payment: the transfer was on account of an antecedent debt, 11 U.S.C. § 547(b)(2), was for the benefit of a

creditor, 11 U.S.C. § 547(b)(1), and the creditor received more than if the case were under chapter 7, 11 U.S.C. § 547(b)(5). The Court finds that the debtor's proof fails as to the remainder of the elements:

(1) The payment was not made from property of the debtor. 11 U.S.C. § 547(b).

(2) The debtor failed to establish proof that it was insolvent in February 1990. 11 U.S.C. § 547(b)(3).

(3) The transfer was not made within ninety days of the date of filing of the petition. 11 U.S.C. § 547(b)(4)(A). The one-year period set forth in section 547(b)(4)(B) is inapplicable where, as here, the transfer was not made to an insider. *Levit* is inapplicable because the transfer was not made for the benefit of an insider. Indeed, in this case, the transfer was made to the detriment of an insider.

Only a portion of the payment made on September 13, 1990, constitutes a preference. A preference exists in the amount of $26,000. The remainder of the payment, approximately $77,000, is not a preference because the transfer was not made from property of the debtor within the meaning of section 547(b). The $26,000 payment constitutes a preference because

(1) the payment was made within the ninety day preference period, 11 U.S.C. § 547(b)(4);

(2) the funds were property of the debtor;

(3) the RTC failed to demonstrate that the debtor was solvent at the time of this payment, 11 U.S.C. § 547(b)(3), (f); and

(4) The RTC failed to demonstrate that section 550(b) applies to preclude recovery by the plaintiff of the $26,000 avoidable preference.

ORDERED AND ADJUDGED

1. The Resolution Trust Corporation has a valid first lien in the amount of $4,200,000.

2. The transfer made in February 1990, in the amount of $200,000 is not a preference within the meaning of 11 U.S.C. § 547(b).

3. The transfer of $26,000 made on September 13, 1990, to the RTC, is a preference which may be recovered from the Resolution Trust Corporation; the remainder of funds paid to the RTC on September 13, 1990, do not constitute a preference within the meaning of 11 U.S.C. § 547(b).

DONE AND ORDERED.